ASKEW, GOVERNOR OF FLORIDA, ᴇᴛ ᴀʟ. *v.*
HARGRAVE ᴇᴛ ᴀʟ.

No. 573.   Argued February 23–24, 1971—Decided March 8, 1971

*Charles E. Miner, Jr.,* argued the cause for appellants. With him on the briefs were *Rivers Buford, Jr.,* and *Stephen Marc Slepin.*

*Hershel Shanks* argued the cause for appellees.   With him on the brief were *Allan I. Mendelsohn, Robert M. Perce, Jr., Richard H. Frank,* and *David Rubin.*

*William H. Adams III* filed a brief for the Florida Education Research Foundation as *amicus curiae* urging reversal.

PER CURIAM.

In 1968, Florida enacted a new law for the financing of public education through state appropriations and local *ad valorem* taxes assessed by each school district. A section of the new law, Fla. Stat. Ann. § 236.251 (Supp. 1970), known as the "Millage Rollback Law," provided that, to be eligible to receive state moneys, a local school district must limit *ad valorem* taxes for school purposes to not more than 10 mills of assessed valuation, with certain exceptions. Appellees filed this class action in the District Court for the Middle District of Florida alleging that the Millage Rollback Law effected an invidious discrimination, in violation of the Equal Protection Clause, against school children of property-poor counties in that 10 mills of *ad valorem* tax in school districts in such counties would produce less dollars per child for educational purposes than would 10 mills of *ad valorem* tax in other counties. A three-judge District Court entered a summary judgment in appellees' favor upon a declaration that the Millage Rollback Law was unconstitutional, and enjoined the appellants from withholding state funds from any school district by virtue of the provisions of that Act. *Hargrave* v. *Kirk,* 313 F. Supp. 944 (1970). We noted probable jurisdiction. 400 U. S. 900 (1970). We vacate and remand.

I

Subsequent to the filing of this suit, *School Board of Broward County* v. *Christian,* No. 69–932, was filed in the Circuit Court of the Second Judicial Circuit of Leon County, Florida. That action attacks the Millage Rollback Law primarily on state law grounds, as violative of

provisions of the Florida Constitution. The District Court, however, rejected appellants' argument that the court "should abstain from considering the case in deference to [the] state court proceeding," 313 F. Supp., at 946–947, holding that under *Monroe* v. *Pape,* 365 U. S. 167 (1961), and *McNeese* v. *Board of Education,* 373 U. S. 668 (1963), "[t]he fact that a state remedy is available is not a valid basis for federal court abstention." 313 F. Supp., at 947. The reliance upon *Monroe* v. *Pape* and *McNeese* was misplaced. *Monroe* v. *Pape* is not in point, for there "the state remedy, though adequate in theory, was not available in practice." 365 U. S., at 174. *McNeese* held that "assertion of a federal claim in a federal court [need not] await an attempt to vindicate *the same claim* in a state court." 373 U. S., at 672 (emphasis added). See also *Wisconsin* v. *Constantineau,* 400 U. S. 433 (1971). Our understanding from the colloquy on oral argument with counsel for the parties is that the *Christian* case asserts, not the "same claim," that is, the federal claim of alleged denial of the federal right of equal protection, but primarily state law claims under the Florida Constitution, which claims, if sustained, will obviate the necessity of determining the Fourteenth Amendment question. In such case, the line of decisions of which *Reetz* v. *Bozanich,* 397 U. S. 82 (1970), is a recent example, states the principles that should inform the exercise of the District Court's discretion as to whether to abstain.

## II

Since the case must be remanded, we add another comment. The appellees' motion for summary judgment was considered on the pleadings and an affidavit which essentially merely verified the allegations of the amended complaint. Our examination of the pleadings and the affidavit persuades us that they are inadequate as a basis for deciding the equal protection claim. They do

not sufficiently present the facts related to appellants' argument that the Millage Rollback Law was only one aspect of a comprehensive legislative program for reorganizing educational financing throughout the State to more nearly equalize educational opportunities for all the school children of the State. Appellants contend that this program enacted a formula calling for "a massive infusion of state money into the several school districts," which more than made up the loss suffered by a school district under the limitation of 10 mills in the assessment of *ad valorem* taxes: "The net effect of the 1968 educational financing enactments was not only to make up for the loss of funds suffered by the counties required to reduce local millage but to greatly increase the moneys available to the counties on a per pupil basis." Appellants' Reply Brief 4. Since the manner in which the program operates may be critical in the decision of the equal protection claim, that claim should not be decided without fully developing the factual record at a hearing.

The judgment of the District Court is vacated and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE BLACK concurs in the judgment and Part II of the opinion.