442 F.2d 1116
 UNIVERSITY DAY CARE CENTER, INC. a/k/a Day Care Action Committee et al., Appellants,
v.
TEMPLE UNIVERSITY — OF the COMMONWEALTH OF HIGHER EDUCATION, Paul R. Anderson, Court of Common Pleas of Philadelphia County.
 No. 71-1091.
 United States Court of Appeals, Third Circuit.
 Argued April 7, 1971.
 Decided April 30, 1971.
 
 David H. Pittinsky, Dilworth, Paxson, Kalish, Levy & Coleman, Philadelphia, Pa., for appellants.
 Peter Platten, Philadelphia, Pa. (Ballard, Spahr, Andrews & Ingersoll, Tyson W. Coughlin, Philadelphia, Pa., on the brief), for appellees.
 Before GANEY, VAN DUSEN and GIBBONS, Circuit Judges.
 OPINION OF THE COURT
 PER CURIAM:
 
 
 1
 This is an appeal from a final judgment dismissing appellants' complaint which sought a temporary and permanent injunction against the continuance in the Court of Common Pleas of the Commonwealth of Pennsylvania of a civil action for an injunction brought by one of the defendants against some of the plaintiffs. The defendants are Temple University of the Commonwealth System of Higher Education (the plaintiff in the Common Pleas action) and Paul R. Anderson, the President of Temple. The plaintiffs are University Day Care Center, Inc., a nonprofit corporation of the Commonwealth of Pennsylvania and four individuals, each of whom is interested in the management of University Day Care Center, Inc., or is a beneficiary of its services. Federal jurisdiction is asserted under 42 U.S.C. § 1983 and 28 U.S.C. § 1343 on the theory that the lawsuit in the Court of Common Pleas was brought by Temple, a state institution, in violation of its own internal administrative rules. This violation, appellants assert, deprives them of the due process of law and equal protection of the law guaranteed to them by the Fourteenth Amendment.
 
 
 2
 By virtue of the Temple University — Commonwealth Act, 1965, Nov. 30, P.L. 843, § 1, 24 P.S. § 2510-1 et seq., (Supp.1970), Temple became a part of the Commonwealth system of higher education. The University operates under a statute which provides:
 
 
 3
 "The entire management, control and conduct of the instructional, administrative, and financial affairs of the university is hereby vested in the board of trustees. The board may exercise all the powers and franchises of the university and make by-laws for their own government, as well as for the university." 24 P.S. § 2510-5.
 
 
 4
 Acting pursuant to this statute the Board of Trustees has enacted by-laws which, among other things, define the authority of officers of the University, especially the President, who is designated the chief executive officer and head of the University. The Board of Trustees has also authorized the recognition of a number of committees within the University. This controversy grows out of a conflict between the jurisdiction claimed by one of those, the Student Activities Committee, and the jurisdiction claimed to be reserved to the executive officers of the University. The due process violation asserted is that in the resolution of that conflict in claimed jurisdictions the University failed to comply with provisions of "The Temple Plan for University Governance," which sets forth seven principles for internal resolution of emergencies resulting from confrontations in the University. One of these principles states, "The University should resort to external authority only after exhausting all its internal procedures." This Plan for University Governance was drafted by a Commission on Student Participation in the Policy Making Processes of the University appointed by the President. It submitted its report through the faculty senate to the Board of Trustees, who on March 11, 1969, approved the seven principles by the following motion:
 
 
 5
 "On motion duly made and seconded, the Board of Trustees approved the recommendation of the Education Committee * * * that the Board (1) take note of the recommendations concerned with procedures for the orderly resolution of serious confrontations which were adopted by the Faculty Senate on December 5, 1968, (2) heartily endorse the seven principles governing such situations, and (3) go on record as approving the President's expression of intent to follow the procedures recommended, but as reserving for the President, or other officer designated by the President to act on his behalf, the obligation to take such action as any given emergency situation demands." (emphasis added)
 
 
 6
 Plaintiffs contend this resolution made the Report of the Commission on Student Participation in the Policy Making Processes of the University a binding administrative regulation. The defendants, referring to the italicized language of the resolution, say that it reserved to the University officers final authority to act in emergencies.
 
 
 7
 The Student Activities Committee, composed of representatives of the administration, the faculty, and students, on December 22, 1969, purported to assume "final authority" for the allocation of space in student activity areas of the campus. There was no prior delegation to the Committee of any such jurisdiction. Plaintiffs contend that the administration by acquiescence approved the Committee's assumption of jurisdiction. The defendants deny any such acquiescence. The Student Activities Committee, on September 1, 1970, allocated to the plaintiff University Day Care Center space in Mitten Hall, a student activity area. The President promptly advised plaintiffs that it could not use this space. When plaintiffs refused to vacate the space an action in the Court of Common Pleas was commenced to that end.
 
 
 8
 The following questions of Pennsylvania law are presented:
 
 
 9
 (1) Could the Board of Trustees under the governing statutes delegate to the Student Activities Committee the right to allocate use of University owned facilities?
 
 
 10
 (2) Did the Board of Trustees directly or through authority delegated to the administration, confer such authority on the Student Activities Committee?
 
 
 11
 (3) Could the Board of Trustees under the governing statutes adopt binding rules for internal governance which would limit the University's right to resort to the Court of Common Pleas of Pennsylvania in an emergency until such time as internal administrative procedures had been exhausted?
 
 
 12
 (4) Did the Board of Trustees adopt binding rules for internal governance which limited the University's right to resort to the Court of Common Pleas until such time as internal administrative procedures had been exhausted?
 
 
 13
 (5) Are any such rules applicable to the situation presented here involving an independent, nonprofit corporation rather than students?
 
 
 14
 Several of these questions, if answered in the negative, would avoid the need for considering the Fourteenth Amendment issues asserted by the plaintiffs. If they are all answered in the affirmative there is no reason to suppose that the Court of Common Pleas will be insensitive to any federal constitutional issues remaining after the state law issues have been resolved. This, then, is a classic case for federal deference to a state forum. See Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Of particular relevance is the recent decision of the Supreme Court in Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971), which reaffirmed the appropriateness of abstention in a case brought under 42 U.S.C. § 1983 where "state law claims * * * if sustained * * * will obviate the necessity of determining the Fourteenth Amendment question." At 478, 91 S.Ct. at 858. There is, moreover, the salutary policy that "[i]n all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it." Smith v. McIver, 22 U.S. 532, 535, 6 L.Ed. 152 (1824). There is no need for the federal court to retain jurisdiction, since it is not alleged that complete relief will be unavailable in the Court of Common Pleas. The order of the district court dismissing the complaint will be affirmed.