Chesley A. **STEELE**

v.

**Rita M. HALEY et al.**

**Civ. A. No. 70-815.**

United States District Court,
D. Massachusetts.

Jan. 6, 1972.

---

**660**

Robert F. Sylvia, Robert L. Caporale, Fine & Ambrogne, Boston, Mass., for plaintiff.

John L. Connell, Jr., Robert P. Sullivan, Lowell, Mass., for defendants.

## OPINION

WYZANSKI, Senior District Judge.

Invoking 42 U.S.C. §§ 1983 and 1985, plaintiff, a public school teacher, brings this action against present and former members of a public school committee on a complaint that they denied him, and conspired to deny him, his constitutional right to due process of law under the Fourteenth Amendment by terminating his appointments to perform, at extra compensation, extra duties as acting head of the Physical Education Department, Director of Athletics, and Football Coach at Westford Academy, a public school, without giving him what he regarded as a sufficiently detailed notice of the grounds and without affording him a public and adversary hearing.

The parties have stipulated the facts, and each side has moved for summary judgment.

Steele is a tenured teacher at Westford Academy, a public high school. In 1969 he had, in addition to his tenure position, appointments on a non-tenure basis, at additional compensation, as acting head of the Physical Education Department, Director of Athletics, and Football Coach (collectively referred to as "athletic appointments"). Each of defendants is or has been a member of the Westford School Committee which has authority to make and terminate appointments of tenure teacher to non-tenure extra duties such as Steele performed.

In December 1969 the Committee received complaints against plaintiff. Without giving him an opportunity to hear, read, or answer the complaints, or any notice that the termination of his athletic appointments was under consideration, or any opportunity to be heard, the Committee on January 12, 1970 in executive session voted "to proceed with the dismissal of Chesley Steele from special duty assignments of director of athletics, football coach, and acting head of physical education for assigned reasons," and on January 15, 1970 sent plaintiff the following letter:

"A number of incidents have been brought to the attention of the School Committee recently concerning the performance by you of your duties as Athletic Director, Acting Head of the Physical Education Department and Football Coach.

Complaints have been made concerning your unwarranted involvement and interference in captaincy elections, the punishment of team members by other team members conducted in your presence, with your authorization and under your direction, your refusal to accept medical guidance concerning injuries to student athletes on several occasions, your re-

luctance and unwillingness to cooperate with school officials in preventing a recurrence of these and other actions which the School Committee deems to be detrimental to the morale of the students under your supervision and to the welfare of the school system.

After careful deliberation on the various complaints made in connection with the foregoing, the School Committee, by unanimous vote of the members present, voted on January 12, 1970 to terminate your appointment as Athletic Director, Acting Head of the Physical Education Department and Football Coach, effective January 19, 1970.

The Committee's decision was based upon the following grounds, among others:

1. The allegations and complaints referred to above, which have been proven or substantiated to the Committee's satisfaction.

2. Your failure to a large extent to inspire in the students with whom you come in contact a feeling of confidence and trust in the performance of your duties as Athletic Director, Acting Head of the Physical Education Department and Football Coach.

3. Your inability or unwillingness to recognize the low morale in the present athletic program and to take the necessary remedial steps.

4. Your failure to furnish in an impartial manner the professional leadership expected of you in each of the above named positions.

5. The Committee's belief that the interest of the Town and the welfare of its public schools will be best served by your removal from each of these positions.

6. The Committee's belief that the lack of harmony and cooperation between you and those athletic students under your supervision and control is detrimental to the welfare of the school and that a higher standard can be obtained with the assistance of another person to fill these positions.

7. The Committee's conclusion that the foregoing actions attributable to you constitute a breach of contract by you.

However, since your duties as Football Coach have ostensibly been performed in full, no adjustment or deduction will be made from the amount of the differential included in your salary which is allocated to your duties as Football Coach. The Committee is presently in doubt and undecided concerning payment of the balance due on the differential included in your salary which is allocated to Athletic Director and will advise you when its decision in this connection has been made."

January 26, 1970 plaintiff together with a representative of the Massachusetts Teachers Association appeared before the Committee to seek information. The Committee's chairman went over the seven specified grounds and "elaborated" them, and the Committee's counsel said plaintiff "has every right to know why charges were brought but not to cross-examine."

February 13, 1970 plaintiff wrote "to request a public hearing before the School Committee to discuss the allegations presented in your letter of January 12, [?15] 1970." The Committee offered him a private interview on April 8, but he insisted on a public hearing, so when plaintiff appeared on April 8 the meeting quickly ended.

April 20, 1970 the Committee voted to reconsider its decision to relieve plaintiff of his athletic duties, and then voted not to reinstate him. On the same day the Committee wrote Steele the following letter:

"On Monday evening, April 20, the Westford School Committee with all members present, voted unanimously not to reinstate you to your extra duties as acting head of the Physical

Education Department, Director of Athletics and football coach at Westford Academy.

In the past several weeks there have been meetings with you and concerned parents in order to inform this Committee of the facts in this case.

Following the meetings and discussion with many different parties the Committee was left with grave reservations as to your effectiveness in the afore named positions.

The Committee is entrusted with the task of providing Westford children with the best possible teaching supervision both in and out of the classroom. This is a tall order. Your long service to Westford and Westford youth was weighed heavily, but, in the light of the uncertainties cast by the original allegations and the ensuing controversy, the Committee now feels that you will not be able to represent the 'best possible teaching supervision.'

The Committee also strongly recognizes that all departments of a school have got to be able to work together in an atmosphere of mutual trust and respect. Disagreements among departments can be tolerated and are often healthy. Open rifts are not. The Committee has grave doubts that you, in your supervisory capacities, would be able to see your duties in the perspective of the entire school philosophy. The Committee thus feels that the students of Westford Academy would be best served by new appointments in each of your supervisory positions."

In the meantime plaintiff sought to arbitrate his controversy. As a teacher employed pursuant to a collective bargaining contract (between the Westford Teachers Association and the Westford School Committee) containing a provision for the arbitration of grievances, Steele presented for arbitration a claim that the Committee violated the collective bargaining agreement when it terminated his athletic appointments. Contending that plaintiff was not entitled to the protection of the contract in respect to his athletic appointments, the Committee, by an equity action in the Middlesex Superior Court of the Commonwealth of Massachusetts, sought "to restrain arbitration." But on May 27, 1970 that court ordered the parties to submit the grievance to arbitration. After hearings, the arbitrator, having canvassed all the issues in a comprehensive opinion, on October 5, 1970 made the following award:

"In refusing to supply Mr. Steele or the Association with the information needed for a defense against the Committee's charges, and by its further refusal to hear his defense and give it consideration in reviewing its termination action, the Westford School Committee violated the Grievance Procedure, Article 5 of its Agreement, when it terminated the appointment of Chesley A. Steele as Athletic Director, Acting Head of the Physical Education Department and Varsity Football Coach, on or about January 15, 1970.

The School Committee is directed to reinstate Mr. Steele to all three positions forthwith, and reimburse him for any salary loss occasioned by its improper action."

It stipulated that "Subsequent to the rendering of the Arbitrator's award, the then members of the Westford School Committee filed a petition in the Middlesex Superior Court under G. L. (Ter. Ed.) Chapter 150C, Sections 11 and 12, praying that the award be vacated or modified. This petition is still under consideration by the Superior Court . . . .".

June 25, 1970, that is, between the time the state court directed that the parties should proceed with the arbitration sought by plaintiff and the date when the arbitrator made his award, plaintiff filed in this court the present complaint alleging causes of action under 42 U.S.C. §§ 1983 and 1985. He claims that the defendants deprived him

of his constitutional rights because they terminated his athletic appointments without giving him "the opportunity to present evidence, confront or cross-examine his accusers, hear the evidence presented against him," or "be informed of the specific charges against him," and because the Committee's action was "taken without prior promulgation of a regulation or order defining what kinds of conduct would be deemed grounds for terminating the Plaintiff's employment in the capacities as acting head of the Department of Physical Education, Athletic Director and Football Coach." The complaint also alleges that the Committee members entered into a conspiracy to deprive plaintiff of his athletic positions without the benefit of constitutional rights.

The threshold question in the case at bar is what is the effect upon plaintiff's causes of action under 42 U.S.C. §§ 1983 and 1985 of the arbitration award proceedings pending in the state court.

The least effect of the state court proceedings is to make it incumbent upon this court to abstain from a decision of the merits of any constitutional issue with respect to the termination of plaintiff's athletic appointments. Since the claims pending in the state court, if sustained, will obviate the necessity of determining whether plaintiff is entitled to be restored to his appointments and to receive damages, this court might find that it was relieved of the necessity of determining the Fourteenth Amendment or other constitutional questions. Askew v. Hargrave, 401 U.S. 476, 91 S. Ct. 856, 28 L.Ed.2d 196 (1971).

But there is a more fundamental obstacle to this court entertaining the present complaint. Plaintiff has not exhausted the arbitral remedies which are available to him, and which, unlike the situation in U. S. Bulk Carriers v. Arguelles, 400 U.S. 351, 91 S.Ct. 409, 27 L. Ed.2d 456 (1971), he has elected to pursue. Where by contract the parties have established a machinery for handling and arbitrating grievances, they have in effect set up their private system of ad-

ministrative remedies. If a plaintiff succeeds in the private administrative process, it will be unnecessary to have a federal judicial hearing. If he fails, he is not estopped from presenting to the judiciary a constitutional claim. It is difficult to see any sound reason for not requiring a § 1983 plaintiff to exhaust his contractual administrative remedies as he is required to exhaust his statutory administrative remedies. Drown v. Portsmouth School District, 435 F.2d 1182, 1186, note 10 (1st Cir., 1970); Dunham v. Crosby, 435 F.2d 1177, 1180, note 2 (1st Cir., 1970); Eisen v. Eastman, 421 F.2d 560 (2nd Cir., 1969). In both situations there is always a possibility that "official abuse can be corrected without resort to lengthy and costly trial" [Note, Exhaustion of State Remedies under the Civil Rights Act, 68 Colum.L.Rev. 1201, 1206 (1968) quoted in Eisen v. Eastman, 421 F.2d 560, 567–568 note 11 (2nd Cir., 1969)].

Complaint dismissed.