**John S. BRIER, Individually and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**Charles LUGER et al., Defendants.**

**Civ. No. 72-546.**

United States District Court, M. D. Pennsylvania.

Nov. 13, 1972.

John J. Brier, Joseph A. Murphy, Scranton, Pa., Sarel M. Kendall, Washington, D. C., for plaintiffs.

James G. McDonough, Jr., Scranton, Pa., C. H. Welles, IV, Asst. Solicitor, Scranton, Pa., for defendants.

## OPINION

MUIR, District Judge.

On Friday, October 27, 1972, John S. Brier instituted this class action against Defendants, County Commissioners and

voter registration officials for the County of Lackawanna, Pennsylvania, challenging the constitutionality of a "purge" of registered voters conducted by the Defendants. The complaint was served on Tuesday, October 31, 1972. The Plaintiff requested preliminary and final injunctions to restore the purged voters to the list of eligible voters before the November 7, 1972 general election. Jurisdiction was asserted under 28 U.S.C. § 1343 and 42 U.S.C. § 1971(d).

A hearing was held on the day requested by Plaintiff, Thursday, November 2, 1972. Because of the severe time factor, counsel stipulated that the matter could be disposed of by a brief order issued before the election, to be followed after the election by an opinion. Plaintiff's request for injunctive relief was denied on November 3, 1972. This Opinion sets forth the reasons for this denial.

The facts of the case may be briefly stated. From May through July, 1972, the Office of Voter Registration in Lackawanna County, Pennsylvania surveyed all voter registration cards. Persons whose cards indicated that they had not voted during the two immediately preceding years were sent a notice which advised them that unless they returned a signed copy of the notice within 10 days, or otherwise requested reinstatement, their registrations would be cancelled.

The named Plaintiff and approximately 5,000 other registered voters of Lackawanna County who, according to the Defendants, had not voted within two years were removed from the voter rolls upon failure to request reinstatement. However, the 10-day reinstatement period was not strictly adhered to, and the Office of Voter Registration reinstated purged voters even after the official period for voter registration had closed on October 10, 1972.

The purported statutory authority for the purge conducted by Defendants is the Act of 1937, P.L. 487, § 38, as amended; 25 P.S. § 951–38.[1] Plaintiff does not attack the constitutionality of this statute. Rather he urges several grounds for holding the purge as conducted by Defendants in 1972 violative of his federal constitutional rights.

(1) the purge was not conducted during the time period specified by statute;

(2) approximately 2% of those purged had voted by absentee ballot within the previous two years;

(3) approximately 3.5% of the registration cards of those purged indicated

---

1. This act provides in relevant part:
 "Within three months after January first of each year except in such years as the commission shall conduct a check of electors in compliance with clause (c) of section thirty of this act, the registration commission shall cause all of the district registers to be examined, and in the case of each elector who has been registered for a period of at least two immediately preceding calendar years and who is not recorded as having voted at any election or primary during said period, the commission shall send to such elector by mail, at his address appearing upon his registration card, a notice setting forth that the records of the commission indicate that he has not voted during the two immediately preceding calendar years and that his registration will be cancelled or suspended at the expiration of ten days from the date of mailing such notice unless he shall, within that period, file with the commission, either personally or by mail, a written request for reinstatement of his registration, or a removal notice properly executed, setting forth his place of residence, and signed by him. At the expiration of the time specified in the notice, the commission shall cancel or suspend the registration of such elector unless he has filed with the commission a signed request for reinstatement of his registration as above provided, or a removal notice. The cancellation or suspension of the registration of any such elector for failure to vote during the two immediately preceding calendar years shall not affect the right of any such elector to subsequently register by personal application to the commission, or a commissioner, or a registrar or a clerk, in the manner provided by this act."

that they had been requalified or reinstated to the voting rolls in 1971;

(4) approximately 3% of those purged had voted in the May, 1970 primary;

(5) approximately 20% of those purged never received the letters notifying them of the purge because their notices were returned by the Post Office pursuant to directions on the envelopes that they not be forwarded; and

(6) Democrats were allegedly purged at a significantly higher rate than were Republicans.

Not all of these matters were properly before the Court.

 Each of the six grounds just listed represents a distinct cause of action. Under Fed.R.Civ.P. 23,[2] a class action may not be maintained unless the named plaintiff or plaintiffs properly represents the class or classes. Only if a named plaintiff has a personal interest in the outcome of the claims can proper representation be assured; only then can he have standing to assert the claim.[3] A plaintiff cannot bring a suit on behalf of a class based upon a cause of action in which he has no rights.[4] The sole named plaintiff in this case was not a member of the classes which would be affected by a decision on the merits of grounds (2), (3), and (4) above, and could not be permitted to pursue their causes of action. Plaintiff was permitted to represent the classes whose grievances fell within sub-¶'s (1), (5), and (6).

 Hence, the court reached the merits of grounds (1), (5), and (6) only. Ground (6), relating to the alleged discriminatory purge of Democrats, is properly brought under 42 U.S. C. § 1971(a)(2)(A) which prohibits the utilization under color of state law of any practices in the determination of voter eligibility which differ from those applied to other individuals within the same county. However, Plaintiff failed to produce sufficient evidence to support this claim. He merely introduced a list of the names and party affiliations of the voters who had been purged in Lackawanna County in 1972. The Court's random sample of 500 of these names showed that approximately 83% of those purged were registered Democrats, 14% were registered Republicans, and 2% were independents. There is a suspicious disparity between the percentage for Democrats and that for Republicans, but a declaration of unconstitutional discrimination cannot be based on mere suspicion. Although Plaintiff had access to the voter registration files, he introduced no evidence of the relative percentages of registered Democrats and Republicans in Lackawanna County, nor did he show that there were Republicans who should have been purged under the guidelines employed by the Commission, but were not so purged. He failed to make out a case as to this issue.

The two remaining grounds of attack were based on admitted facts: the purge took place from May to July;

---

2. The portions of Fed.R.Civ.P. 23 pertinent to this discussion are:

"(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

"(b) *Class Actions Maintainable.* An action may be maintained as a class

action if the prerequisites of subdivision (a) are satisfied, and in addition:
\* \* \* \* \*
"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; . . ."

3. *See* Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

4. Broomer v. Schultz, 239 F.Supp. 699, 705 (E.D.Pa.1965); Kramer v. Union Free School District No. 15, 282 F.Supp. 70, 72 (E.D.N.Y.1968).

1972, not during the statutorily specified period of January to March, and the notices were stamped, "Do not forward." Plaintiff contended that each of these procedures violated his state statutory rights and consequently his federal constitutional rights. He asserted in particular that his right not to be deprived of his vote without due process of law had been infringed, that his rights of freedom of speech and freedom of association had been violated, and that he had been denied the equal protection of the laws. Only the first of these three contentions is treated in this opinion; I found the issues presented by the other two either frivolous or identical with those presented by the due process claim. *See* Williams v. Rhodes, 393 U.S. 23, 30–31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968).

Plaintiff did not contest the constitutionality of the purge statute. The parallel Pennsylvania statute for cities of the first class has recently been found constitutional by a three-judge District Court panel which held that the state interest in preventing fraud in voting outweighed the minimal burden on the purged voters. Williams v. Osser, 350 F.Supp. 646 (E.D.Pa.1972).

■ Serious consideration was given to exercising the Court's discretion to abstain from deciding the issues presented by these contentions because state court vindication of Plaintiff's assertions of violations of state law would have rendered consideration of Plaintiff's federal constitutional claims unnecessary. See Askew v. Hargrave, 401 U.S. 476, 478, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971) (distinguishing McNeese v. Board of Education, 373 U.S. 668, 83 S. Ct. 1433, 10 L.Ed.2d 622 (1963)); Reetz v. Bozanich, 397 U.S. 82, 86–87, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Railroad Commission v. Pullman Co., 312 U. S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); University Day Care Center v. Temple U., 442 F.2d 1116, 1118 (3d Cir. 1971). However, this case did not come before the Court for decision until November 2, 1972. By that time, Plaintiff could no longer file a timely petition in state court.[5] There was no assurance that the state court would have allowed a petition nunc pro tunc, particularly since Plaintiff could have filed a timely petition in state court on October 27, 1972, the date he filed his complaint in this court, or earlier. In this light, abstention with a view to allowing the state court first to consider the state law issues did not seem appropriate.

The lateness of the purge was due to a dilemma faced by Defendants during the first few months of 1972. The purge statute commands them to examine the registers and conduct a purge during the first three months of the year. Here the registration documents were impounded by the state court until early March, 1972 because of certain alleged irregularities in the election in the fall of 1971. Examination of the registers could have commenced in March, but Defendants were also charged by statute with the duty of preparing for the primary scheduled for April 25, 1972. This duty conflicted with their duty to examine the registers. Defendants reasonably chose to perform first the more pressing of the two duties.

■ In my view, the delay of four months in conducting the purge did not convert a constitutional practice into an unconstitutional one. The purged voters still had ample time to regain their ability to vote in the November, 1972 election. Purged voters who failed to request reinstatement within the specified period of 10 days were nonetheless reinstated by the commission if they so requested at any time up through the date of the hearing, and the County Solicitor stated in open court that their requests would be honored up to election day by the Board of Elections. Furthermore, any purged elector has a statutory right to re-register in the normal manner,[6] and those purged in 1972 had two to four months to do so.

---

5. Act of 1937, P.L. 487, § 41, as amended; 25 P.S. § 951–41.

6. Act of 1937, P.L. 487, § 38, as amended; 25 P.S. § 951–38.

■ Plaintiff's final ground for relief was based on a procedure instituted by Defendants in the absence of an express statutory authority or prohibition. The purge statute provides only that the notice of cancellation of registration shall be sent to the elector at the address appearing upon his registration card. Defendants stamped these notices "Do not forward." A complementary statute, relating to check-ups of the registers, is instructive here.[7] In those years in which the commission conducts a check-up, it is not required to examine the registers pursuant to the purge statute.[8] The check-up statute directs that the notice which is sent to an elector to inform him that any discrepancy between his actual name and address and his name and address as recorded in the register will constitute grounds for challenging his vote "shall contain on the outside a request of the postmaster to return it within five days if it cannot be delivered to the addressee at the address given thereon." 25 P.S. § 951–30(a). It is possible to infer from the presence of this specific direction in 25 P.S. § 951–30(a) and its absence in the purge statute that such a request of the postmaster should not be made with respect to purge notices. However, my reading of the statutory scheme regarding registration of voters leads me to judge such a construction to be overly narrow and technical. The legislative intent to prevent warning notices from being received by persons who have failed to advise the commission of their change of address is clear. In my view, Defendants acted reasonably in adopting the no-forwarding practice spelled out in § 951–30(a) to the parallel purposes and needs of § 951–38.

Because the direction to the Post Office not to forward the notices was not shown to be discriminatory or to present an absolute bar to voting, the constitutional test applied here was to balance the state interest against the burden on the purged individuals. Williams v. Osser, 350 F.Supp. 646 (E.D.Pa.1972). The purpose of the direction not to forward is to avert fraud. The only burden on the individual is to notify the commission of any change in his address, something he is required to do by state law.[9] I found the minor burden on the purged voters outweighed by the legitimate state interest. In my view, Plaintiff failed to prove that Defendants violated the constitutional rights of the classes properly represented by Plaintiff, and thus they were not entitled to any equitable relief.

This opinion constitutes the findings of fact and conclusions of law of this Court.

---

7. Act of 1937, P.L. 487, § 30, as amended; 25 P.S. § 951–30.

8. See the Act of 1937, P.L. 487, § 38, as amended; 25 P.S. § 951–38.

9. Act of 1937, P.L. 487, § 26, as amended; 25 P.S. § 951–26(b).