**ROPICO, INC., Plaintiff,**

v.

**The CITY OF NEW YORK et al., Defendants.**

**Alfred AVINS, Plaintiff,**

v.

**The CITY OF NEW YORK and Harrison J. Goldin, Defendants.**

Nos. 75 Civ. 6168, 75 Civ. 6246.

United States District Court, S. D. New York.

May 17, 1976.

---

4. For ten months during the pendency of this case, the court sat without a trial judge in its Tallahassee division.

Alfred Avins pro se.

Macolm A. MacIntyre, Godfrey P. Schmidt, New York City, for Ropico, Inc.

W. Bernard Richland, Corp. Counsel, New York City, for defendants City of New York and Goldin; James G. Greilsheimer, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant Municipal Assistance Corp. for the City of New York; Robert L. Laufer, Howard S. Veisz, New York City, of counsel.

GAGLIARDI, District Judge.

These two actions challenge the constitutionality of the New York State Emergency Moratorium Act for the City of New York, 1975 McKinney Session Laws, Chapter 874 (the "Act") which was enacted November 14, 1975 at an Extraordinary Session of the New York State Legislature convened specially to deal with the impending default of New York City on full faith and credit obligations falling due in December of 1975.[1] The Act provides in essence that payment of principal on short-term notes issued by the City shall be suspended for three years, but that noteholders have the right either (1) to exchange their notes for longer term obligations bearing an interest rate of at least six percent per year or (2) to obtain six percent per year, plus any additional amount that may be held to be mandated under the state or federal constitutions, on their existing obligations until the principal is repaid.

In June of 1975, in an earlier attempt to alleviate the City's financial problems, the State Legislature created the Municipal Assistance Corporation for the City of New York ("MAC"), a corporate governmental agency and instrumentality of the State constituting a public benefit corporation, which is empowered to issue its own bonds to raise money for the City's benefit. On November 26, 1975 pursuant to the provisions of the Act, MAC made an exchange offer granting holders of New York City

---

1. The Act was passed as part of a general overall plan to deal with New York City's deteriorating financial situation. Two months prior to its passage, the State Legislature enacted the New York City Financial Emergency Act, 1975 McKinney Session Laws, Chapter 868 ("Financial Emergency Act") which provided for the establishment of a New York State Financial Emergency Control Board to review all city expenditures, and a wage freeze applicable to City employees. At that time the Legislature found that "a financial emergency and emergency period exists in the City of New York." ("Financial Emergency Act" § 1).

The first section of the Moratorium Act sets forth the legislative findings and statement of purposes. It states in part:

It is hereby found and declared that the grave public emergency found and declared to exist by the legislature in adopting the New York State Financial Emergency Act for the City of New York has dramatically worsened in the last two months. Today, not only is the City of New York threatened with default on its outstanding obligations, but financially sound agencies of the state itself are similarly threatened because of public fears about the effects of default by the city.

\* \* \* \* \* \*

There is therefore an imminent danger that the City of New York will be unable to pay its outstanding short-term indebtedness and even to provide those basic services essential to the health, safety and welfare of its inhabitants and the continuation of orderly government in the city. . . ."

notes due and payable between December 1975 and March 1976 the right to exchange their notes for MAC bonds maturing on July 1, 1986 with an annual interest rate of 8% a year. These bonds, unlike City notes, are not secured by the full faith and credit of the City or any other governmental entity with taxing authority; rather they are obligations of MAC, which, under the applicable legislation, are backed by revenues from the New York State stock transfer tax, the City sales tax and certain state aid allocations to the City. MAC has no independent taxing power and its right to the revenue from these taxes must be renewed by successive legislatures.

Alfred Avins, pro se plaintiff in 75 Civ. 6246 a professor of constitutional law at Delaware Law School, holds New York City notes due and payable on December 11, 1975. Ropico, Inc., plaintiff in 75 Civ. 6168, is a Florida corporation that, like Avins, owns a New York City Revenue Anticipation note due and payable on the same date. Plaintiffs claim that the Moratorium Act is invalid under Federal law because (1) it impairs the obligation of contracts in violation of Article I, Section 10 of the United States Constitution, (2) it deprives the note holders of their property without due process of law in violation of the Fourteenth Amendment, (3) it closes access to the plaintiffs to the courts for claims of payment on the notes in violation of Article III and the Fourteenth Amendment, and (4) it violates

Section 83(i) of the Bankruptcy Act, 11 U.S.C. § 403(i), and Article I, Section 8, Clause 4 by creating a state bankruptcy procedure in conflict with that legislated by Congress in the Bankruptcy Act.[2] Ropico also argues that the Act violates the Equal Protection Clause of the Fourteenth Amendment by arbitrarily discriminating against short-term City noteholders as opposed to other creditors, and the Full Faith and Credit Clause of Article IV.[3] Both plaintiffs seek class action[4] status and Avins requests the convening of a three-judge court. Although not formally consolidated, the cases have been argued together before this court.

Defendants City of New York and MAC have moved for a stay of these actions pending final resolution of a similar state court action entitled *Flushing National Bank v. Municipal Assistance Corporation for City of New York, et al.,* Index No. 20245/75 (Sup.Ct.N.Y.Co.) (the *"Flushing Bank"* case). In that case the plaintiff asserts essentially the same federal constitutional and statutory attacks on the Act as the plaintiffs here, but additionally claims that the Act violates several sections of Article 8 of the New York State Constitution.[5] The *Flushing Bank* case was filed on November 17, 1975 and Justice Harold Baer rendered a decision on December 23, 1975 upholding the validity of the Act, Sup., 382 N.Y.S.2d 764. That decision was unani-

---

2. Section 83(i) of the Bankruptcy Act, U.S.C. § 403(i), provides in pertinent part:

   That no state law prescribing a method of composition of indebtedness shall be binding upon any creditor who does not consent to such composition, and no judgment shall be entered under such State law which would bind a creditor to such composition without his consent.

   The plaintiffs here argue that the Act clearly violates this section. The basis of their constitutional argument is that since Congress has clearly exercised the power granted to it by Article I, Section 8, Clause 4 to establish uniform bankruptcy laws, New York State does not have the power to enact any law which impairs the obligation of contractual indebtedness *in the same manner as a bankruptcy law.*

3. Ropico's argument is that the issuance of short-term obligations are "Public Acts" entitled to Full Faith and Credit under Article IV, Section 1. That section of the Constitution would appear, however, to require a state to give Full Faith and Credit only to the public Acts, Records and Judicial Proceedings of *every other state.* (emphasis added)

4. *Ropico purports to represent all holders of* City notes subject to the moratorium, whereas Avins seeks to represent only those noteholders who have refused to exchange their notes for MAC bonds.

5. The *Flushing Bank* case argues that the Act violates Sections 2, 10, and 12 of Article 8 of the New York State Constitution. In addition it makes basically the same arguments based on federal law that are made here.

mously affirmed by the Appellate Division on May 4, 1976, Sup., 379 N.Y.S.2d 978.

The defendants contend that since the *Flushing Bank* case raises questions as to the validity of the Act under the State Constitution, it is appropriate for this court to abstain pending resolution of the validity of the Act under state law by the State Courts. They further claim that a stay is especially appropriate in this case because the *Flushing Bank* case asserts on behalf of the same class of noteholders[6] the same federal claims asserted here. They argue that that case was filed earlier and is further advanced. The Special Term decision was rendered more than four months ago and the Appellate Division issued its decision on May 4, 1976.

Plaintiffs vigorously oppose the motion for a stay. They argue that the state constitutional questions are insubstantial and that their suits assert rights guaranteed by federal law appropriate for immediate federal court resolution. Avins further argues that since a three-judge court is necessary, a stay can only be granted by that court and not a single district judge.

## I. *Three-Judge Court*

The City claims that this case is not proper for a three-judge court because it does not involve a statute of state-wide application. While no case denying a three-judge court on this ground has dealt with a statute of such state-wide importance and concern as that here, the decided authorities clearly support the City's position.

■■■■ Under 28 U.S.C. § 2281, a three-judge court must be convened where an injunction is sought restraining the enforcement of any state statute on the ground that it is unconstitutional. The purpose of the statute is to prevent a single federal judge from being able to paralyze the oper-

ation of a state's entire regulatory scheme or to bring an "improvident statewide doom . . . of a state's legislative policy." *Moody v. Flowers,* 387 U.S. 97, 101, 87 S.Ct. 1544, 1547, 18 L.Ed.2d 643 (1967); *Phillips v. United States,* 312 U.S. 246, 251, 61 S.Ct. 480, 85 L.Ed. 800 (1940); Nielsen, *Three-Judge Courts: A Comprehensive Study,* 66 F.R.D. 495, 499 (1975). However, because the requirement that three judges hear a single case can entail a "serious drain upon the federal judicial system" *Phillips v. United States, supra* at 250, 61 S.Ct. at 483, the Supreme Court has consistently construed the statute as authorizing a three-judge court only "when a state statute of general and statewide application is sought to be enjoined." *Board of Regents v. New Left Education Project,* 404 U.S. 541, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972); *Moody v. Flowers, supra; Ex Parte Collins,* 277 U.S. 565, 48 S.Ct. 585, 72 L.Ed. 990 (1928); *Rorick v. Board of Commissioners of Everglades Drainage District,* 307 U.S. 208, 59 S.Ct. 808, 83 L.Ed. 1242 (1939).

■■■ Although the statute here is undoubtedly one of great state-wide importance and the question of its constitutionality has state-wide and even national implications, it is not a statute of state-wide application as required by the cases interpreting 28 U.S.C. § 2281. The Act is entitled "The New York State Emergency Moratorium Act for the *City of New York,*" (emphasis added) and by its terms applies only to New York City. While it is true that it applies to holders of New York City obligations wherever they may be found, it still affects only one municipality and conditions affecting that municipality. *Rorick v. Board of Commissioners of Everglades Drainage District, supra* is controlling authority. There the Supreme Court found that a Florida statute affecting the financial administra-

---

**6.** The *Flushing Bank* complaint, like the complaint in Avins, specifically disclaims any representation of noteholders who have tendered their notes pursuant to the Exchange Offer. Although the defendants have here contended that the *Flushing Bank* case is a class action which provides an adequate vehicle for all parties whom the plaintiffs in these actions seek to

represent, the court notes that MAC's brief filed in the Appellate Division in the *Flushing Bank* case points out that no application has been made in that case to allow the plaintiff to proceed as a class action, and thus at this point there is no way to tell whether the plaintiff there represents any interests other than its own.

tion of a large drainage district in South Florida was not a statute of state-wide operation despite the apparent application of the statute to all holders of the district's bonds wherever situated. There, as here, suit was brought by bondholders whose rights were affected by the plan. The Supreme Court in that case indicated that to determine whether a three-judge court is proper, the district court must look to whether the debtor to which the challenged legislation applies is a state-wide entity, and the location of the creditors affected is not the determinative factor. A three-judge court not being required, Avins' argument that only such a court can grant a stay is academic.

## II. The Stay

■ The defendants argue that both plaintiffs' rights are fully protected by the *Flushing Bank* case in the state courts. However, as a general rule litigants have a right to have substantial federal claims heard in federal court even though the rights asserted may be adjudicated in some other forum. *Zwickler v. Koota,* 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); *McNeese v. Board of Education for Community Unit School District 187,* 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *McRedmond v. Wilson,* 533 F.2d 757 (2d Cir. 1976). Here plaintiffs assert that the Act is depriving them and other holders of City notes of substantial rights in violation of the federal constitution and federal statutes. In this situation a stay by this court under the judge-made doctrine of abstention can only be justified if there are special circumstances in which resolution of the federal issues is controlled by the interpretation of state laws that are susceptible to a determination by state courts that would avoid or modify the necessity of a federal adjudication. *Kusper v. Pontikes,* 414 U.S. 51, 54, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973); *Lake Carriers Ass'n v. MacMullan,* 406 U.S.

498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); *Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); *McRedmond v. Wilson, supra* at 760. Abstention is proper only if (1) the state law is uncertain, (2) the resolution of the federal issue is dependent on the interpretation to be given state law, and (3) the state law is susceptible of an interpretation that would make resolution of the federal issue unnecessary. *McRedmond v. Wilson, supra,* at 761.

■ The defendants contend that all these prerequisites are present here. Although all parties agree that the Act itself is clear, the defendants claim that the effect of the Act under Article 8 of the New York State Constitution which deals with local indebtedness is not. They argue that the Act contains provisions which may well be in conflict with the guarantees to municipal bondholders contained in Article 8. The effect of that Article on the Act is currently being tested in the state courts in the *Flushing Bank* case, and a decision there finding the Act in violation of the state constitution would render a federal adjudication of the Act's validity unnecessary. They claim that the cases of *Reetz v. Bozanich,* 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970), and *Askew v. Hargrave,* 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971), are virtually indistinguishable from the situation involved here. In those cases the Supreme Court held that the district courts erred in not abstaining when faced with federal constitutional challenges to state statutes which possibly conflicted with state constitutional provisions that had never been definitively interpreted by the state courts. In both cases the Supreme Court found that it would be better for the federal courts to "avoid any possible irritant in the federal-state relationship" by deferring jurisdiction until the state courts had passed on the state constitutional questions. *Reetz, supra,* 397 U.S. at 87, 90 S.Ct. 788.[7]

---

7. This line of authorities was recently reaffirmed by the Supreme Court in *Carey v. Sugar and Wrestling Revue, Inc.,* 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587, 44 U.S.L.W. 4416 (1976), where the decision of a three-judge

court finding New York's attachment statute unconstitutional was reversed on the ground that the lower court should have abstained from hearing the case pending state court determination of the constitutionality of the stat-

Plaintiffs on the other hand claim that there is no uncertain question of state law here. The state constitutional claims asserted in the *Flushing Bank* case are, according to plaintiffs, insubstantial. Rather they argue that the *Flushing Bank* case, like the actions brought here, asserts primarily claims arising under federal law—i. e. that the Act is repugnant to the United States Constitution and to the federal Bankruptcy Act. Relying heavily on the Second Circuit's recent decision in *McRedmond v. Wilson, supra,* plaintiffs argue that the "mere possibility" that a state court might find an unambiguous state statute to violate the federal constitution is insufficient grounds for a stay of a federal action. *McRedmond, supra* at 764. They find this case similar to *Harman v. Forssenius, supra* and *Kusper v. Pontikes, supra* in which the Supreme Court held that district courts properly refused to abstain from hearing claims where the state statutes involved were not "fairly susceptible of a reading that would avoid the necessity of a constitutional adjudication." In those cases the Supreme Court found abstention "would amount to shirking the solemn responsibility of the federal courts to 'guard, enforce, and protect, every right granted or secured by the constitution of the United States.'" *Kusper v. Pontikes, supra,* 414 U.S. at 55, 94 S.Ct. at 306.

■ The Supreme Court decisions discussed above indicate that the key issue in determining whether a stay should be granted in this case is whether Article 8 of the New York State Constitution is "fairly susceptible of a reading that would avoid the necessity of a federal adjudication."[8] In considering this question, this court must weigh the desirability of permitting state courts the first opportunity to pass on the constitutionality of a state statute that is a vital part of the state's program for dealing with a significant financial crisis affecting its largest city against the possibility that by this court's abstention the plaintiffs and other holders of approximately $1.6 billion in City notes may be deprived of substantial rights guaranteed to them by federal law.

■■ After a review of the voluminous materials submitted by all parties in the *Flushing Bank* action in both the Supreme Court and the Appellate Division, this court believes—although the issue is not entirely free from doubt—that Article 8 of the New York State Constitution is not "fairly susceptible" of a reading by the state courts that would render a federal adjudication unnecessary. The basis of the plaintiff's argument in the *Flushing Bank* case is apparently that Article 8, section 2 of the State constitution, pledging the City's full faith and credit to its obligations, Article 8, section 10, setting maximum restrictions on the amount of indebtedness, and Article 8, section 12, restricting the legislature's right to limit a municipality's power to pay off its debts by levying real

ute. The case sub judice, unlike *Carey v. Sugar, supra* or *McRedmond v. Wilson, supra* involves the interpretation of a state constitutional provision which could invalidate the statute independently of any interpretation of federal law. However, the basic principles as to when state law is considered to be uncertain outlined in these cases should be applicable here.

8. Although the decisions discussing this issue have not specifically detailed exactly how susceptible to a certain interpretation a state constitutional provision must be before it becomes fairly susceptible of a reading that would avoid the necessity of a federal adjudication, certainly a federal court need not find that it would adopt that interpretation before it grants a stay. Even an interpretation that appears doubtful, if there is some possibility that a state court acting in good faith might adopt it, should be sufficient grounds for staying the federal action. On the other hand where a state constitutional claim that is clearly devoid of merit is appended to substantial federal claims in a state court action, this court does not believe it proper to stay an adjudication of the federal claims brought by another plaintiff in federal court. Undoubtedly, there are situations, such as the one here, in which the state constitutional claim arguably falls somewhere in between being clearly devoid of merit and remotely possible of an interpretation by the state courts that might avoid the necessity for a federal adjudication. While deference must be given to the state courts in such cases, there comes a point at which the federal court must proceed to decide the substantial federal issues without awaiting further confirmation from the state courts of the obvious conclusion that the state claim is without merit.

estate taxes, all create an implied constitutional obligation to allocate all real estate tax revenues first to the payment of City debt. As no prior case has ever construed these sections directly in a situation like this and there are only a few cases dealing with the effect of any of the provisions of Article 8 in the context of the failure of a municipality to pay its obligations,[9] it is very difficult to say definitively that these provisions of the state constitution are not "susceptible" to a certain reading by the state courts. Nevertheless, a provision of the state constitution does not automatically become susceptible of a certain interpretation by the mere assertion of that interpretation in a suit brought in state court alleging basically federal claims. The arguments based on the state constitution in the *Flushing Bank* suit have now been summarily rejected by both the Special Term judge and by the five justices who considered it in the Appellate Division. An independent review of these claims indicates that the state constitutional provisions here cannot legitimately be said to be "fairly susceptible" to an interpretation that would obviate the need for a federal adjudication.

Article 8, Section 2 of the New York State Constitution, on which the plaintiff in the *Flushing Bank* case relies, states that:

"No indebtedness shall be contracted by any . . . city . . . unless such . . . city . . . shall have pledged its faith and credit for the payment of the principal thereof and the interest thereon."

From this language the plaintiff argues that the City has an unconditional obligation to pay all its indebtedness in full on the date it falls due. It is undisputed, however, that the faith and credit of the City was pledged to the payment of the notes subject to the moratorium, and there is no specific language in this section that requires the City to make immediate full payment on revenue anticipation notes backed by its faith and credit on the due date if it has insufficient funds to do so, and if there is a state statute permitting it to extend the maturity date of the debt. Article 8, Section 2 of the New York State Constitution does provide that municipal indebtedness other than that issued in anticipation of the collection of taxes is paid out of the first revenues received by a municipality. However, this clause specifically exempts from this first lien requirement tax anticipation notes of the type involved here.

The plaintiff in the *Flushing Bank* case also notes that under further provisions of Article 8, Section 2, municipal indebtedness shall be paid in annual installments, the first of which must be within two years of the date of issue. This provision, however, excepts certain short-term indebtedness in-

9. Most of the cases involving interpretations of Article 8, Section 2 of the New York State Constitution apparently arose out of the default of the City of Long Beach on its obligations during the depression. In the somewhat confusing trilogy of opinions in the case of *Van Derzee v. City of Long Beach,* 177 Misc. 894, 31 N.Y.S.2d 359 (Sup.Ct. Nassau Co. 1941); 178 Misc. 29, 32 N.Y.S.2d 954 (Sup.Ct. Nassau Co. 1942) aff'd, 265 App.Div. 1059, 39 N.Y.S.2d 401 (2d Dep't 1943), it was originally held in an action at law brought to compel payment of the unpaid bonds due that Article 8, Section 2 did not apply to any indebtedness issued prior to its enactment in 1938, and in any event that section does not absolutely require a city official to make immediate payment to bondholders if doing so would deprive the municipality of essential public services. 177 Misc. 894, 31 N.Y.S.2d 359, 361 (Sup.Ct. Nassau Co. 1941). In a subsequent action brought by the same plaintiff under Article 78 of the N.Y.C.P.L.R. to compel the city treasurer to pay his bonds, the court apparently held to the contrary, and found that the constitutional first lien provision applied to all municipal indebtedness whenever contracted, and that hardship was no defense to a claim on city bonds. 178 Misc. 29, 32 N.Y.S.2d 954 (Sup.Ct. Nassau Co. 1942). That decision was affirmed by the Appellate Division. 265 App.Div. 1059, 39 N.Y.S.2d 401 (2d Dep't 1943). These cases all appear to have involved bonds with a maturity of more than five years, which are presumably covered by the first lien provisions of Article 8, Section 2, and not, as here, short-term notes, which are specifically excepted from those provisions. Another case involving the default by the City of Long Beach is *Snell v. City of Long Beach,* 263 App.Div. 1021, 33 N.Y.S.2d 923 (2d Dep't 1942), which does not discuss the state constitutional provisions at issue here.

cluding indebtedness which is to be paid "in one of the two fiscal years immediately succeeding the fiscal year in which such indebtedness was contracted." Plaintiff argues that the "fair intendment" of this exception is that short-term indebtedness—such as the notes in question here—must be paid within the two fiscal years following the fiscal year of issue. While this argument is undoubtedly ingenious, the Court notes that there is simply no language imposing the suggested requirement in these provisions and *Flushing Bank's* contention appears to ask the courts to create a substantive constitutional restriction where none exists.

Similarly the arguments based on Article 8, Sections 10 and 12 of the New York State Constitution require that a court read into the language of those sections substantive provisions that are not contained in the specific language. Article 8, Section 10 states in pertinent part:

> Hereafter, in any county, city, village or school district described in this section, the amount to be raised by tax on real estate in any fiscal year, in addition to providing for the interest on and the principle of all indebtedness, shall not exceed an amount equal to the following percentages of the average full valuation of taxable real estate of such county, city, village or school district, less the amount to be raised by tax on real estate in such year for the payment of the interest on and redemption of certificates or other evidence of indebtedness described in paragraphs A and D of section five of this article, or renewals thereof . . .

The percentage applicable to New York City is 2.5%. *Flushing Bank* contends that this language when read in conjunction with Article 8, Section 12 of the state constitution, which precludes the legislature from restricting the power of a locality to levy taxes for the payment of interest or principal on indebtedness, imposes on the City an absolute requirement that real estate taxes sufficient to pay all indebtedness in fact be levied. However, no such explicit

mandate is contained in the statutory language, and on their face these sections appear merely to limit the power of a municipality to levy real estate taxes above a certain level. Nowhere is there anything that commands the City to levy real estate taxes at the maximum rate constitutionally permitted.

A review of the briefs filed and the opinions that were handed down in the New York Courts indicates that, although these state constitutional arguments clearly were made, the *Flushing Bank* suit, like the suits here, basically attacks the validity of the Act under federal law. The bulk of the opinions in both the lower court and the Appellate Division discussed the question of the validity of the Act under the United States Constitution. The state constitutional arguments were rejected as without merit in one brief paragraph in the Appellate Division and received only slightly more attention in the opinion of Justice Baer at Special Term. It thus appears that the serious questions concerning the validity of the Act are solely questions arising under federal law, and not the state constitution.

■ Under these circumstances, this court must be guided by the Second Circuit's recent holding in *McRedmond v. Wilson, supra* that where the state law is clear, the federal court must perform its adjudicative duty and has no right to abstain merely because a state court decision might render a federal adjudication unnecessary. *McRedmond, supra,* at 761.

The state court proceeding asserts basically the same claims raised here. As the court in *McRedmond* noted:

> In such a case the "assertion of a federal claim in federal court [need not] await an attempt to vindicate the same claim in state court." *Askew v. Hargrave, supra,* 401 U.S. at 478, 91 S.Ct. 856, 28 L.Ed.2d 196; *McNeese v. Board of Education,* 373 U.S. at 672, 83 S.Ct. 1433, 10 L.Ed.2d 622.

■ While the defendants here argue that the *Flushing Bank* case is the "more appropriate vehicle" for the assertion of these claims and that it will be a wasteful duplication of effort to have a parallel ac-

tion proceeding in federal court, this court does not believe that under *McRedmond* it can voluntarily decline to hear serious claims asserted under federal law merely because another litigant has previously filed a similar action in the state courts.[10] Where the law is clear and the only significant question is whether the law violates the federal constitution or federal statutes, the "mere possibility" that the state courts might take the initiative in striking down its own law is no ground for abstention. *McRedmond, supra* at 761. In such cases a federal court has a duty to adjudicate every litigant's claim that is properly before it.

The motion for a stay is therefore denied.

So Ordered.

---

10. While this court has considerable sympathy for the defendant City of New York's claim that having to prepare and argue a significant case like this one will place a considerable strain on a badly understaffed Corporation Counsel's Office which has recently had to endure substantial personnel reductions as a result of the financial problems that are the cause of the controversy here, this court believes that the City has a duty to argue a case raising serious constitutional questions about a substantial element of its financial plan seriously affecting holders of some $1.6 billion of City notes. To the degree that this case raises the same issues as the state court actions, then much of the preparation in briefing and arguing the questions there will be useful in this action.