The HERALD COMPANY, a New York Corporation, doing business in Missouri as Globe-Democrat Publishing Company, Appellant,

v.

Theodore D. McNEAL et al., Appellees.

No. 76–1460.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1977.
Decided April 13, 1977.

---

Lon Hocker, St. Louis, Mo., for appellant.

Kenneth C. Brostron, St. Louis, Mo., for appellee; Albert J. Stephan, Jr., St. Louis, Mo., on the brief.

* WILLIAM C. STUART, District Judge, Southern District of Iowa, sitting by designation.

1. Arrest records appear to refer to the arrest register, the records of action taken on charges and the records of prior arrests and convictions. Previously, this information had been included in a single document referred to as the arrest register. After this suit was filed, the arrest register form was revised and now includes only the following information: the identification of the person arrested; the date, time and location of the arrest; the charge and the booking officer; and the release, bonding and manner of release.

The police report form currently in use requests the following information: the type of incident; the date, time and location of the incident; the date and time the incident was reported to the police; the manner in which the incident was reported to the police; the identification of the victim, witnesses, the person reporting the incident; the person wanted or arrested; descriptions of any vehicles or property involved; the police units notified; and a narrative description of the incident. Globe does not claim that it is entitled to access to investigative reports. It suggests that the cur-

John D. Ashcroft, Atty. Gen., and Walter W. Nowotny, Jr., Asst. Atty. Gen., Jefferson City, Mo., filed brief for State of Mo. amicus curiae.

Before HEANEY and STEPHENSON, Circuit Judges, and STUART, District Judge.*

HEANEY, Circuit Judge.

The publisher of the Globe-Democrat brought this action seeking to enjoin the Commissioners of the Board of Police from denying access to arrest records and police reports.[1] In Counts I and II, Globe claims that these records and reports should be available to their reporters pursuant to the "Sunshine" law, Mo.R.S. §§ 610.010 and 610.015 and other state statutes, Mo.R.S. §§ 109.180, 109.190 and 109.210 et seq. It also claims that the refusal to permit access to arrest records and police reports denies their property right in the news and impairs freedom of the press in violation of the Constitutions of Missouri and of the United States. In Count III, Globe claims that the Banks amendment to the "Sunshine" law,[2] which closes or expunges arrest

rent police report form could be modified so that purely speculative and investigative material would be deleted.

Undoubtedly, what is meant by arrest records and police reports will be further clarified on remand.

2. The Banks amendment to the Missouri "Sunshine" law, Mo.R.S. § 610.010 et seq. provides:

600.100. *Arrest records, closed, when—expunged, when*

If any person is arrested and not charged with an offense against the law within thirty days of his arrest, all records of the arrest and of any detention or confinement incident thereto shall thereafter be closed records to all persons except the person arrested. If there is no conviction within one year after the records are closed, all records of the arrest and of any detention or confinement incident thereto shall be expunged in any city or county having a population of five hundred thousand or more.

610.105. *Effect of nolle pros or dismissal on records*

If the person arrested is charged but the case is subsequently nolle prossed, dismissed or the accused is found not guilty in the court

records under certain circumstances, impairs freedom of the press and is special legislation in violation of Mo.Const. art. III, § 40(30) as well as state and federal constitutional equal protection provisions. The District Court dismissed the action without prejudice by invocation of the abstention doctrine.[3] On appeal, the State of Missouri filed a brief as amicus curiae.

The Board of Police Commissioners has traditionally published, on a daily basis, a narrative summary of all significant crimes and arrests in the preceding twenty-four hours. This summary continues to be published and made available to reporters. During February, 1976, Globe sought access to arrest records and police reports which contained information in addition to that provided by the summary. This action was filed after the Board denied Globe's request. In response to the action, the Board initiated a new procedure and made a revised arrest register available to reporters.[4] It provides, however, that if no charge is filed within thirty days of the date of the arrest, the arrest register is closed as required by Mo.R.S. § 610.100. Police reports are still unavailable.

Two lawsuits seeking similar relief were pending in state courts at the time this action was brought. One is a virtually identical action filed by Globe in the Circuit Court of the County of St. Louis. The other is an action filed by the Pulitzer Publishing Company in the Circuit Court of the

City of St. Louis. The Pulitzer action also seeks access to arrest records and police reports but does not challenge the constitutionality of the Banks amendment. The Globe action was removed from the trial calendar in August, 1976, to be rescheduled pending the outcome of this action. The Pulitzer action is still pending.

## I. *Abstention.*

■ The District Court dismissed this action by invocation of the abstention doctrine giving as reasons the existence of a similar pending state action and the presence of issues of unsettled state law. We hold that the District Court properly abstained from deciding Counts I and II because the relevant state statutes may be construed by the state court in the pending ·Pulitzer case in a way that will avoid the federal constitutional issues raised. We also hold that the action should not have been dismissed because retention of jurisdiction is the appropriate course of action when a District Court abstains. *Trial Lawyers Asso. v. N. J. Supreme Court,* 409 U.S. 467, 469, 93 S.Ct. 627, 34 L.Ed.2d 651 (1973).[5] Abstention was not proper, however, as to Count III since state court review of the state constitutional issue, which may make our decision of the federal constitutional issues unnecessary, is likely to be significantly delayed.

■ Abstention is the exception rather than the rule, *Colorado River Water Cons.*

---

in which the action is prosecuted, official records pertaining to the case shall thereafter be closed records to all persons except the person arrested or charged.

610.110. *Failure to recite closed record excused*

No person as to whom such records have become closed records or as to whom such records have been expunged shall thereafter under any provision of law be held to be guilty of perjury or otherwise of giving a false statement by reason of his failure to recite or acknowledge such arrest or trial in response to any inquiry made of him for any purpose.

610.115. *Penalty*

Any person who willfully violates any provision of sections 610.100 or 610.105 is guilty of a misdemeanor and, upon conviction

thereof, shall be punished as provided by law.

3. *The Herald Company, a New York Corporation, Doing Business in Missouri as Globe-Democrat Publishing Company v. Theodore D. McNeal, et al.,* No. 76–212C(3) (E.D.Mo., filed April 22, 1976).

4. *See* n. 1, *supra.*

5. Dismissal without prejudice is only appropriate if retention of jurisdiction by the federal court would interfere with obtaining a resolution of the questions of state law by a state court. *See Harris County Comm'rs Court v. Moore,* 420 U.S. 77, 88 n. 14, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); Wright, *Handbook of the Law of Federal Courts,* 220 n. 19 (3d ed. 1976).

*Dist. v. United States*, 424 U.S. 800, 812–813, 96 L.Ed.2d 1236, 1243–1244, 47 L.Ed.2d 483, 495 (1976), sanctioned only in narrowly limited "special circumstances" which justify the delay and expense to which the application of the doctrine inevitably gives rise. *Kusper v. Pontikes*, 414 U.S. 51, 54, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973); *Lake Carriers' Asso. v. MacMullan*, 406 U.S. 498, 509, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); *Zwickler v. Koota*, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). Abstention is appropriate, however, when a federal constitutional issue might be mooted or presented in a different posture by a state court determination of state law issues. *Bellotti v. Baird*, 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976); *Carey v. Sugar*, 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976); *Colorado River Water Cons. Dist. v. United States, supra.* The Board and the State of Missouri argue that this action falls within this category of abstention since there are both state statutory and state constitutional questions which may be dispositive, thus avoiding the necessity of reaching the federal constitutional issues.

In Counts I and II, Globe contends that it is entitled to access to arrest records and police reports under the state "Sunshine" law and the state public records law.[6] The question of whether the state "Sunshine" law, Mo.R.S. §§ 610.010 and 610.015, when construed with certain other Missouri statutes pertaining to public records, Mo.R.S. §§ 109.180, 109.190 and 109.210 *et seq.*, mandates access to arrest records and police reports, has never been considered by the state courts. Abstention is not automatically required whenever a federal court is faced with judicially unconstrued state laws. *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Chicago v. Atchison, Topeka & Santa F. R. Co.*, 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958); *Doud v. Hodge*, 350 U.S. 485, 76 S.Ct. 491, 100 L.Ed. 577 (1956); but is appropriate where the state laws are uncertain, and the uncertainty is such that a determination by the state court may obviate the need for deciding the federal constitutional question. *Lake Carriers' Asso. v. MacMullan, supra* 406 U.S. at 511, 92 S.Ct. 1749; *Harman v. Forssenius*, 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); *Baggett v. Bullitt*, 377 U.S. 360, 375–379, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). The relevant state statutory provisions here could reasonably be construed to require that arrest records and police reports be open to the public.[7] Since such a construction would avoid the necessity of reaching the constitutional issues, we conclude that the District Court was correct in abstaining with respect to the issues raised by Counts I and II of Globe's complaint. *Boehning v. Indiana Employees Asso.*, 423 U.S. 6, 96 S.Ct. 168, 46 L.Ed.2d 148 (1975). Moreover, since exactly the same issues are

6. Globe argues that the Board of Police Commissioners, an agency under Mo.R.S. § 109.210(1), is required to "make and maintain" records of its "procedures and essential transactions" under Mo.R.S. § 109.240(2), and that police reports are records of its "procedures and essential transactions." It is also argued that the arrest records and police reports are required to be kept open because all records required to be kept by statute are to be open under Mo.R.S. § 109.180 and under the "Sunshine" law.

The Board of Police Commissioners argues that Mo.R.S. § 109.180 is not applicable. It contends that it is not required by statute to keep arrest records and police reports because that is not listed as one of its duties in Mo.R.S. § 84.010 *et seq.* and because the record-keeping requirement of Mo.R.S. § 109.240(2) applies only to state and local agencies. It further contends that the records and reports are not

required to be open under the "Sunshine" law because of the applicability of the litigation exception to the "Sunshine" law, Mo.R.S. § 610.025(2), and because that law provides that records of arrest may be closed. Mo.R.S. §§ 610.100 and 610.105.

7. We note that Mo.R.S. §§ 109.180 and 109.190, which require public records to be open for inspection and copying, have been construed to be applicable to parole records of the St. Louis Court of Criminal Corrections and to accident reports filed with the motor vehicle safety responsibility unit. Missouri Op.Atty.Gen.No. 169, McNeal (June 6, 1963); Missouri Op.Atty. Gen.No. 64, Morris (September 13, 1961).

Indeed, if arrest records were not considered to be public records which are required to be open, there would have been little reason for the Banks amendment.

raised in the Pulitzer case now pending in state court, there is "a substantial and immediate possibility of obviating petitioner's federal claim by a decision on state law grounds." *Steffel v. Thompson*, 415 U.S. 452, 475 n. 22, 94 S.Ct. 1209, 1224, 39 L.Ed.2d 505 (1974); *Askew v. Hargrave*, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971).

Whether abstention is appropriate with respect to the issues raised by Count III of Globe's complaint is a more difficult question. In that Count, Globe challenges the Banks amendment to the "Sunshine" law as special legislation in violation of Missouri Constitution, art. III § 40(30). The amendment is applicable only to cities or counties having a population of 500,000 or more. For this reason, Globe contends the amendment violates the special legislation provisions of the Missouri Constitution. No state court has yet considered whether the Banks amendment is special legislation under this provision.

■ The special legislation provision is unique to the Missouri Constitution and does not mirror a similar provision in the federal Constitution.[8] While abstention is usually required when the uncertain state constitutional provision is unique, *Reetz v. Bozanich*, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); *Meridian v. Southern Bell Teleph. & Teleg. Co.*, 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959), we, nevertheless, believe that abstention is inappropriate here. State court review of the Banks amendment is likely to be significantly delayed because it was not challenged in the pending Pulitzer action. It was challenged in Globe's state court action,

but the state court deferred consideration of the matter pending our determination in this case. We are concerned by the potential for delay because the underlying federal constitutional issue in Count III is that the Banks amendment impairs freedom of the press guaranteed by the First Amendment. Thus,

> to force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect.

*Zwickler v. Koota, supra* 389 U.S. at 252, 88 S.Ct. at 397–398.

Accordingly, while we agree that abstention was appropriate with respect to Counts I and II, it was not appropriate with respect to Count III. On remand, the District Court is directed to reinstate the cause of action and enter an abstention order postponing any decision of the federal constitutional issues raised in Counts I and II pending final state court determination of the issues of state law inherent in those counts. The District Court may await the decision of the state trial court in the Pulitzer case before proceeding to hear and determine Count III. If the state trial court in the Pulitzer case reaches the issues raised in Count III, the District Court may enter an order of abstention with respect to Count III as well.

## II. *Jurisdiction.*

The District Court granted abstention without reaching the issue of jurisdiction. It is argued by the Board of Police that this

---

8. Abstention is not required where the state constitutional provision is the mirror of the federal one. *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Drexler v. Southwest DuBois School Corporation*, 504 F.2d 836, 839 (7th Cir. 1974) (en banc); *Stephens v. Tielsch*, 502 F.2d 1360, 1361 nn. 1 & 2 and accompanying text (9th Cir. 1974); *Reid v. Board of Education of City of New York*, 453 F.2d 238, 244 (2nd Cir. 1971). In *Askew v. Hargrave*, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971), the Supreme Court ordered abstention in a case that involved state and federal constitutional provisions that mirrored one another. The plaintiff in *Askew* was

challenging a Florida educational taxing scheme on equal protection. Two explanations have been offered for the Court's decision. *See Stephens v. Tielsch, supra.* First, it is likely that non-mirror issues were also involved. While the challenge did in part rest upon the state's counterpart to the federal equal protection clause, it also raised questions relating to *ad valorem* property taxes authorized under unique provisions of the Florida Constitution. *See Hargrave v. Kirk*, 313 F.Supp. 944, 946 (M.D.Fla.1970). Second, it is suggested that the Court may have also relied upon the fact that a similar action was pending in the Florida courts.

action should have been dismissed because the requisite amount in controversy was not demonstrated and no federal question was presented.

■ Jurisdiction was asserted under 28 U.S.C. §§ 1331, 1332 and 1343(3). A clear challenge to the constitutionality of a state statute is presented by this action. Thus, jurisdiction is proper under 28 U.S.C. § 1343(3) which provides for jurisdiction without an amount-in-controversy requirement, to redress the deprivation under color of any state law or of any right secured by the Constitution. *Lynch v. Household Finance Corp.*, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). The exercise of pendant jurisdiction with respect to the state law claims is appropriate because both the state and federal claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).[9] Thus, we find it unnecessary to determine whether Globe sufficiently demonstrated the requisite amount in controversy required for jurisdiction under 28 U.S.C. §§ 1331 or 1332.

■ The Board also claims that no federal claim was stated because Globe has no constitutional right of access to arrest records and police reports. The relevant consideration in determining whether the Dis-

trict Court has jurisdiction is not whether the plaintiff's cause of action lacks merit, because then dismissal would be on the merits and not for lack of jurisdiction. *See Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Instead, the focus is upon whether the complaint presents a substantial federal question. While we do not reach the merits of Globe's claims, they have at least presented a colorable constitutional claim.[10]

Accordingly, we remand this action to the District Court for further proceedings in accord with this opinion. We further note that this action was filed before the effective date of the amendments to the three-judge court provisions, Act of August 12, 1976, Pub.L. No. 94–381, amending 28 U.S.C. §§ 2281, 2282, 2284 and 2403, and, thus, a three-judge court may be required.

---

**9.** We are not dealing with a situation where the federal claim was filed merely to invoke federal jurisdiction over the pendant state court claims. *See Luther v. Loewi & Co., Inc.*, 549 F.2d 1173 (8th Cir., 1977).

**10.** In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court held that a state is entitled to publicize a record of an official act such as an arrest. *See also Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). The Supreme Court has also recognized that "news gathering is not without its First Amendment protections". *Branzburg v. Hayes*, 408 U.S. 665, 707, 92 S.Ct. 2646, 2670, 33 L.Ed.2d 626 (1972). The Court has held that regulations restricting personal interviews between newsmen and prison inmates were justified because the press was not denied access available to the general public. *Saxbe v. Washington Post Co.*, 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514 (1974); *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct.

2800, 41 L.Ed.2d 495 (1974). Despite some broad language in those opinions, we find it hard to believe that the Court intended that any governmental restriction on access to sources of information is constitutionally permissible as long as it applies to the general public as well as the press.

> At some point official restraints on access to news sources, even though not directed solely at the press, may so undermine the function of the First Amendment that it is both appropriate and necessary to require the government to justify such regulations in terms more compelling than discretionary authority and administrative convenience.

*Saxbe v. Washington Post Co., supra* 417 U.S. at 860, 94 S.Ct. at 2820 (Powell, J., dissenting). Thus, Globe's claims are not necessarily precluded by the Supreme Court's decisions in *Saxbe v. Washington Post Co., supra*, and *Pell v. Procunier, supra*.