511 F.Supp. 269 (1981)
The HERALD COMPANY, a New York corporation, doing business in Missouri as Globe Democrat Publishing Co., Plaintiff,
v.
Theodore McNEAL, Edward J. Walsh, Jr., George T. Mehan, Jr., Mrs. John W. Seddon, John H. Poelker, Mayor of the City of St. Louis, Defendants.
No. 76-212C(1).
United States District Court, E. D. Missouri, E. D.
March 11, 1981.
*270 Lon Hocker, Jr., Ziercher, Hocker, Tzinberg, Human & Michenfelder, Clayton, Mo., W. Munro Roberts, Jr., St. Louis, Mo., for plaintiff.
John H. Lashly, Kenneth C. Brostron, Lashly, Caruthers, Thies, Rava & Hamel, St. Louis, Mo., for defendants.
Before FLOYD R. GIBSON, Senior Circuit Judge, WANGELIN, Chief Judge, and NANGLE, District Judge.

MEMORANDUM
This matter is before the Court upon defendants' motion for summary judgment. For the reasons stated below, defendants' motion will be granted.
Because this suit was filed on March 9, 1976 and asked for an injunction against the enforcement of a state statute, this Court convened a three judge panel to hear the cause under the former Three Judge Court Act, 28 U.S.C. § 2281 (repealed by Act August 12, 1976, P.L. 94-381, §§ 1, 2, 90 Stat. 1119; see § 7 for savings clause).
This controversy surrounds an action by the publisher of the St. Louis Globe Democrat to enjoin the Commissioners of the Board of Police of the City of St. Louis from denying access to arrest records and police reports, and to challenge the constitutionality of the Missouri statutes which limit press and public access to these records and reports.
Missouri Statute Chapter 109 governs the custody, preservation, transcribing and management of public records. As a subsection to this Chapter, §§ 109.180 (RSMo 1969) provides, in part, that:
[e]xcept as otherwise provided by law, all state, county and municipal records kept pursuant to statute or ordinance shall at all times be open for a personal inspection by any citizen of Missouri, and those in *271 charge of the records shall not refuse a privilege to any citizen....
The Police Commissioners of the Board of Police of the City of St. Louis and its agent officers make and maintain arrest registers and police records. These arrest records are "records" within the meaning of the Missouri Sunshine Law, § 610.010 et seq. (RSMo 1973). An amendment to the Missouri Sunshine Law, §§ 610.100  610.115 (RSMo 1973) (commonly known as the Bank's Amendment), allows closure and/or expungement of arrest records to all persons, except the arrestee, under certain conditions.
Counts 1 and 2 of plaintiff's complaint allege that the denial of access to these records in police custody is illegal, and demand their release. Count 3 challenges the constitutionality of the Bank's Amendment, and seeks release of those records closed pursuant to that amendment.

Count 1.
The records sought in Count 1 are identified by plaintiff as an arrest register, defined as "arrest record(s) as to each arrest, containing identification of the person arrested, the date, time and booking officer, the charge, the release, bonding, manner of release...."
After the filing of this complaint on March 9, 1976, the Board of Commissioners commenced new procedures which have made available to the plaintiff and general public the arrest registers, except to the extent that these records are closed/expunged pursuant to §§ 610.100 and 610.105. A press release issued on March 18, 1976 by Colonel Theodore D. McNeal, President of the St. Louis Board of Police Commissioners, announced a revised policy whereby the Board "will make available an arrest register for a period up to thirty days from the date of arrest, even though no charge has been filed against the individual involved."
A change in circumstances between the time a case or controversy originates and the time when a court passes upon the merits of the argument, may result in a moot cause. See Tennessee Gas Pipeline Co. v. Federal Power Commission, 606 F.2d 1373 (D.C.Cir.1979) and Quincy Oil, Inc. v. Federal Energy Administration, 472 F.Supp. 1233 (D.Mass.1979). Such is the instance now before us. This request for release of arrest registers specified in Count 1 has been granted and the Police Board policy affording the opportunity for their inspection has been in existence for over four years. Therefore, defendants' motion for summary judgment as to Count 1 will be granted.

Count 2.
The records sought in Count 2 are identified as police reports, defined by plaintiff as records made and maintained "as to each arrest, disturbance of the peace, fire, or other transactions conducted pursuant to a duty imposed upon them by § 84.090 (RSMo 1969) a record by the police officer or officers making the arrest, preserving the peace, or otherwise conducting the transactions...."
The police reports consist of two informational components:
(1) information concerning records of incidents reported to police, but which do not result in an arrest, and
(2) information relating to reports of incidents in which an arrest has resulted.
The investigation reports contain confidential material such as identities of wanted individuals. In its suggestions in support of a temporary injunction, filed with the Court on April 12, 1976, the plaintiff recognized that some of the police reports contained such investigative and speculative materials, and furthermore stated it did not seek such information. Therefore, in substance plaintiff only seeks such information as is listed on the arrest registers. While the plaintiff suggests that the police reports should be open for public inspection, with modifications made to exclude confidential, speculative or investigative material, this request has already been complied with. This information is and has, in effect, already been made available to plaintiff and the general public since April of 1976 in the *272 form of arrest registers and "Daily Crime and Happening Reports". The request in Count 2, then, is in the same posture as that of Count 1  moot. Declining an invitation to rule upon this moot question, the defendants' motion to grant summary judgment on Count 2 will be granted.

Count 3.
Count 3 of plaintiff's complaint is a broad attack upon the constitutionality of the Bank's Amendment, §§ 610.100610.115, (RSMo 1973).[1] Plaintiff's initial complaint is that the closure and expungement of arrest records is a violation of the free speech and free press clauses of the First and Fourteenth Amendments to the United States Constitution. Defendants argue that plaintiff lacks standing to raise this issue. This Court cannot agree. A similar argument was rejected in United States v. Cianfrani, 573 F.2d 835 (3rd Cir. 1978). In that case, media representatives sought to challenge the district court's closure of pre-trial proceedings. The intervenors therein were in the same position as plaintiff in this case  they sought to obtain information which was kept from the public.
In deciding that the intervenors possessed the requisite standing to challenge the closure order, the court held that their allegations that they were denied access to the pre-trial hearing and the records thereof stated the constitutionally required "injury in fact." Id. at 845. Likewise, the court held that the challenged practices harmed the intervenors, and that the requested relief would benefit them. Finally, the court rejected the argument, now pressed by defendants herein, that plaintiff lacks standing because it alleges no more than an injury that is suffered by the public at large.
So long as the "injury in fact" alleged by each intervenor is a "distinct and palpable injury to himself," standing should not be denied "even if it is an injury shared by a large class of other possible litigants." Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). E. g., United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 683-90, 93 S.Ct. 2405, [2413-17,] 37 L.Ed.2d 254 (1973). We believe that intervenors have alleged injuries beyond generalized grievances, and that they state sufficiently such demonstrable, particularized injury to justify assertion of jurisdiction by this court.
Id., at 845-46. The same is true in the instant case.
The fact that plaintiff's constitutional claims might ultimately be found to be without merit is irrelevant to the standing inquiry. Such a determination goes to the substantive merits of the claims, not to plaintiff's standing to assert such claims. Cf. Herald Co. v. McNeal, 553 F.2d 1125, 1131 (8th Cir. 1977).
The gist of plaintiff's First Amendment claim is that the press and the public have a constitutional right of access to the information which is closed or expunged pursuant to the Bank's Amendment. This Court can find no such right of access in the Constitution.
It should be initially pointed out what is not involved herein. The information *273 which plaintiff seeks is not totally shielded from public view. The information is freely available to the press and the public prior to the time that the Bank's Amendment mandates closure or expungement. During that period plaintiff presumably is free to inspect the records at will. Rather, what is involved herein is the legislative determination that at some point the right of privacy of an individual arrested but not charged, or charged but not convicted, outweighs the right of the public and the press to access to this information.
It is well settled that the press possesses no greater right of access to government-held information than the public generally. Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); Saxbe v. Washington Post Co., 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514 (1974); Nixon v. Warner Communications, Inc., 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). The law is not so clear, however, as to the extent to which the government may limit access by both the public and the press to information within the government's control. The issue was presented in Houchins v. KQED, Inc., 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978), but the result therein was agreed to by only four members of the court, two members having taken no part in the consideration of the case. Those four justices, however, generally agreed that the First Amendment provided no right of access to all sources of information within the government's control. This was true even though the information involved, the conditions in the county jail, were admittedly matters of great public concern, and there were no alternative means to obtain information as to those conditions.
It must be conceded that the activities of the police department likewise constitute matters of great public concern. In contrast, however, the information plaintiff seeks herein is readily available if plaintiff expends the time and energy to collect that information during the periods prior to closure. Cf. Pell, supra; Saxbe, supra.
This Court must conclude that plaintiff has no constitutional right of access to the information it now seeks. The Constitution is not a "Freedom of Information Act," Houchins, supra at 14, 98 S.Ct. at 2596 quoting from Stewart, "Or of the Press," 26 Hastings L.J. 631, 636 (1975); nor is the First Amendment a Sunshine Act. Gannett Co. v. DePasquale, 443 U.S. 368, 405, 99 S.Ct. 2898, 2918, 61 L.Ed.2d 608 (1979) (Rehnquist, J., concurring). There are no absolutes in this area,[2] and absent such absolutes it is, in the first instance, a legislative determination as to where the balance between access and privacy must be struck. Just as the Freedom of Information Act, 5 U.S.C. § 552, with its general rule of disclosure and specific exemptions, is a reasonable legislative accommodation of the competing interests, Black Panther Party v. Kehoe, 39 Cal.App.3d 900, 114 Cal. Rptr. 725 (1974), so too is the Bank's Amendment.
The issue is not whether this Court would have struck the same balance between the competing interests; the issue is whether the balance struck by the legislature, the body which must strike that balance in the first instance, can be said to be arbitrary or unreasonable. Valid justifications support the closure or expungement of the arrest records of persons not subsequently charged or ultimately determined to be innocent. This Court cannot conclude that the Missouri Legislature was unreasonable in recognizing these justifications via the Bank's Amendment. Plaintiff's varied examples of why broader disclosure is necessary to the press' effective investigation of possible abuses in the executive and judicial branches are appropriately made to the legislature, not this Court.
This Court does not view Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), as mandating a contrary result. The Supreme Court there found that the First Amendment protected the right of the public and the press to attend criminal trials. *274 The various opinions of the Justices, in reaching this conclusion, relied heavily on the historical openness of criminal trials. Without such a background, the result may well have been different. There is no such historical tradition of access in this case, and Richmond Newspapers is therefore not controlling.
It could be argued, however, that the Bank's Amendment is unconstitutional in that it permits the closure of court records pertaining to a criminal trial when the defendant is acquitted. See § 610.105. Initially, this Court must remark that it is not at all certain that the Amendment relates to court records; the definition of "Public governmental body" in § 610.010, does not clearly cover courts, and the Bank's Amendment would apparently apply only to the records of such "bodies." In any event, such a claim is not properly before this Court at this time. Plaintiff herein seeks access only to police records; whether court records may constitutionally be closed in light of Richmond Newspapers is a different question. Since the Bank's Amendment is constitutional in relation to the police records sought herein, this Court will not reach out to decide other issues. Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). A person to whom a statute may constitutionally be applied normally may not raise the claim that the statute may conceivably be applied unconstitutionally to others. Though an exception to this rule is sometimes applied in First Amendment litigation, the exception should not be applied herein. This Court cannot say that the asserted overbreadth is substantial in relation to the plainly legitimate purposes of the statute. Id.
Plaintiff also alleges that expungement/closure of arrest records is a deprivation of a Fifth Amendment property right in news. This attempt to find a due process property right to news is also deficient. We know of no holding by a court which finds a Fifth Amendment right to possession of information in governmental control. Whether plaintiff's claim is in the nature of a violation of a substantive due process right, see Moore v. City of East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), or a procedural due process right, see Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (the gravamen of Count III lacks specificity), both would draw their content from a liberty or property concept, which in this instance is merely a rearticulation of the explicit First Amendment guarantees of free speech and free press.
Two other alleged injuries in fact  deprivation of a plaintiff from records which may be used either to prove an alibi or as a defense to a libel action  are not issues properly before this Court at the present time. A fundamental Article III case or controversy requirement is that a cause must be "ripe" for litigation. Basically, the concern is that a court may enter a controversy grounded in uncertain and contingent events which indeed may not ever take place. See Wright, Miller & Cooper, Federal Practice and Procedure, Vol. 13 (Supplement § 3532, p. 182).
Considerations are twofold in any determination of the ripeness of a controversy. What facts, if any, tend to give meaning to the legal issue presented, and what is the nature and degree of the regulation upon those parties who bring the cause seeking judicial relief? Toilet Goods Assoc. v. Gardner, 387 U.S. 158, 165, 87 S.Ct. 1520, 1525, 18 L.Ed.2d 697 (1966). Because plaintiff has alleged no particular incident in which the Bank's Amendment caused the purported deprivation of rights, the cause instead merely posits a hypothetical for the Court. Thus, this cause fails to meet the threshold justiciability requirement of ripeness for a determination of the cause on the merits.
Plaintiff also alleges that the Bank's Amendment is unconstitutional under the Missouri Constitution for a variety of reasons. The plaintiff asserts that § 610.100  610.115 are in violation of:
(1) Article I § 8  free speech clause;
(2) Article I § 10  the due process clause  as depriving plaintiff of its property right in news and other such deprivations guaranteed by the due process *275 clause, such as depriving a plaintiff of the information necessary to fashion an alibi defense;
(3) Article I § 8  the libel or slander clause  as depriving plaintiff of the means to fashion a libel defense; and
(4) Article III § 23  as part of a bill containing a subject not clearly expressed in its title.
(5) Article I [sic] § 40 (30)  as a special law having application duly to cities and counties having a population of 500,000 or more where no rational basis for the classification exists;
The dismissal of the first three claims is dictated by the prior discussion of plaintiff's federal claims. The fourth claim was considered and rejected by the Missouri Supreme Court in Cohen v. Poelker, 520 S.W.2d 50 (Mo. banc 1975) and will therefore be rejected here.
This Court also finds plaintiff's fifth claim unpersuasive. Section 610.100 is applicable to all cities or counties which have a population of one-half million persons or more. This section is not limited to specific cities or counties, and any city or county which now or hereafter has a population of one-half million persons or more comes within the statute.
Article III, § 40 of the Missouri Constitution prohibits the passing of any special or local law where a general law can be made applicable. However, the Missouri Supreme Court has repeatedly held that:
Where an act applies to all cities of a certain population whether there be one or many, it does not offend against the rule, since it does not exclude any city that may come within the classification therein made during its effective existence, despite the improbability that such will in fact occur.
State ex rel. Atkinson v. Planned Indus. Expan. Auth., 517 S.W.2d 36, 43 (Mo. banc 1975) (emphasis in original); Walters v. City of St. Louis, 364 Mo. 56, 259 S.W.2d 377 (1953), aff'd 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660 (1954). Since the instant statute is not "special" legislation within the meaning of Article III, § 40 of the Missouri Constitution, this Court need not inquire as to whether "a general law can be made applicable." Article III, § 40(30). It is sufficient to state that the Bank's Amendment does not violate this provision of the Missouri Constitution because it is not "special" legislation.
Therefore, summary judgment will be entered in defendants' favor on Count 3.
FLOYD R. GIBSON, Senior Circuit Judge, dissenting in part.
This case presents a difficult and novel issue of constitutional interpretation concerning a newspaper's "right of access" under the First Amendment to arrest and court records in the State of Missouri. I believe the factual and legal issues presented herein have not been briefed to the extent necessary to form a proper basis for issuance of summary judgment against the newspaper. I, therefore, dissent from that part of the panel's memorandum granting summary judgment in favor of McNeal on Count 3.
A trial on the merits should be held on the constitutional issue of "right of access." At trial, both parties should present arguments concerning the extent of the right and the factual circumstances present in any balancing of the right of access against the state's authority to restrict the flow of official information. In addition, I dissent from that portion of the memorandum determining the state constitutional issues. These issues are proper for trial on the merits under the doctrine of pendent jurisdiction.

I.
Constitutional issues which are both difficult and of a large public import should not be decided on an inadequate factual basis. Felix v. Young, 536 F.2d 1126, 1135 (6th Cir. 1976); see Askew v. Hargrave, 401 U.S. 476, 478-79, 91 S.Ct. 856, 857-58, 28 L.Ed.2d 196 (1971); Sindermann v. Perry, 430 F.2d 939, 943 (5th Cir. 1970), aff'd, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). See generally 6 (Part 2) Moore's Federal Practice *276 § 56.17[10] at 56-772 (1980). The issue of the form and scope of any First Amendment "right of access" is both a novel and a complex one, dependent in large part upon the factual circumstances attendant to the claim. The newspaper's claim should not be rejected until it has had a full and fair opportunity to spell out the exact extent of its claim and to contest any asserted policy rationale presented by the state in favor of the Bank's Amendment.

II.
Until recently, the Supreme Court did not recognize a First Amendment "right of access" to governmental information. In Houchins v. KQED, Inc., 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978), the Court was presented with the issue of whether or not the news media had a constitutional right of access to a county jail, over and above that of other persons, to interview inmates and make recordings and photographs for publication and broadcast.
In the plurality opinion by Chief Justice Burger, joined by Justices White and Rehnquist, the Court found that "[t]here is an undoubted right to gather news `from any source by means within the law,' id. [Branzburg v. Hayes, 408 U.S. 665] at 681-82, [92 S.Ct. 2646, 2656-57 33 L.Ed.2d 626, but that affords no basis for the claim that the First Amendment compels others  private persons or governments  to supply information." Id. at 11, 98 S.Ct. at 2594. Justice Stewart concurred in judgment and substantially agreed with Chief Justice Burger on this point. "The First and Fourteenth Amendments do not guarantee the public a right of access to information generated or controlled by government, ...." Id. at 16, 98 S.Ct. at 2597. (Stewart, J., concurring in judgment).
Justice Stevens filed a dissenting opinion, in which he was joined by Justices Brennan and Powell. Justice Stevens viewed the issue presented as whether the denial of access to the prison to both the media and the general public, "which cut off the flow of information at its source, abridged the public's right to be informed about those conditions." Id. at 34, 98 S.Ct. at 2606 (Stevens, J., dissenting). Justice Stevens stated:
The preservation of a full and free flow of information to the general public has long been recognized as a core objective of the First Amendment to the Constitution. It is for this reason that the First Amendment protects not only the dissemination but also the receipt of information and ideas.
....
... [I]nformation gathering is entitled to some measure of constitutional protection. See, e. g., Branzburg v. Hayes, 408 U.S. 665, 681, [92 S.Ct. 2646, 2656, 33 L.Ed.2d 626] Pell v. Procunier, 417 U.S., at 833, [94 S.Ct. at 2809.] As this Court's decisions clearly indicate, however, this protection is not for the private benefit of those who might qualify as representatives of the "press" but to insure that the citizens are fully informed regarding matters of public interest and importance.
Id. at 30, 32, 98 S.Ct. at 2604, 2605 (footnotes omitted).
Justices Blackmun and Marshall took no part in the consideration of the case.
In summary, four members of the Court (Chief Justice Burger and Justices White, Stewart, and Rehnquist), found no right of access to information. Three members held to the contrary viewpoint (Justices Brennan, Powell, and Stevens). Two members did not participate (Justices Marshall and Blackmun).
This past term the Supreme Court decided the case of Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). In Richmond Newspapers, the Court found that the right of access to attend criminal trials is implicit in the guarantees of the First Amendment. The plurality opinion of Chief Justice Burger, concurred in by Justices White and Stevens, found that "[f]ree speech carries with it some freedom to listen." Id., 448 U.S. at 576, 100 S.Ct. at 2827, 65 L.Ed.2d at 989. Chief Justice Burger, however, refrained from creating a broad right of access under the First Amendment:

*277 It is not crucial whether we describe this right to attend criminal trials to hear, see, and communicate observations concerning them as a "right of access," cf. Gannett, supra, [443 U.S.] at 397, 99 S.Ct. 2898, 2914, 61 L.Ed.2d 608 (POWELL, J., concurring); Saxbe v. Washington Post Co., 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514 (1974); Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495, 71 Ohio Ops.2d 195 (1974), or a "right to gather information," for we have recognized that "without some protection for seeking out the news, freedom of the press could be eviscerated." Branzburg v. Hayes, 408 U.S. 665, 681, 92 S.Ct. 2646, 2656, 33 L.Ed.2d 626 (1972). The explicit, guaranteed rights to speak and to publish concerning what takes place at a trial would lose much meaning if access to observe the trial could, as it was here, be foreclosed arbitrarily.
Id. (footnotes omitted).
The concurring opinion of Justice Stevens and the concurring-in-judgment opinion of Justice Brennan, joined by Justice Marshall, were not so reticent on the right of access under the First Amendment. Justice Stevens stated:
This is a watershed case. Until today the Court has accorded virtually absolute protection to the dissemination of information or ideas, but never before has it squarely held that the acquisition of newsworthy matter is entitled to any constitutional protection whatsoever.
Id., 448 U.S. at 582, 100 S.Ct. at 2830, 65 L.Ed.2d at 993 (Stevens, J., concurring.)
Justice Brennan explicitly recognized the right of access:
Read with care and in context, our decisions must therefore be understood as holding only that any privilege of access to governmental information is subject to a degree of restraint dictated by the nature of the information and countervailing interests in security or confidentiality. ...
....
... [R]esolution of First Amendment public access claims in individual cases must be strongly influenced by the weight of historical practice and by an assessment of the specific structural value of public access in the circumstances.
Id., 448 U.S. at 586, 597, 100 S.Ct. at 2833, 2839, 65 L.Ed.2d at 996, 1003 (Brennan, J., concurring in judgment).
In addition, while Justice Powell did not participate in Richmond Newspapers, he had earlier recognized a right of access in his concurring opinion in Gannett v. De Pasquale, 443 U.S. 368, 397-98, 99 S.Ct. 2898, 2914-15, 61 L.Ed.2d 608 (Powell, J., concurring). See also Saxbe v. Washington Post Co., 417 U.S. 843, 862-63, 94 S.Ct. 2811, 41 L.Ed.2d 514 (Powell, J., dissenting).
Justice Rehnquist dissented in Richmond Newspapers, maintaining on the basis of his concurrence in Gannett Co. v. De Pasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), that the first amendment provided no right of public access to a trial. Richmond Newspapers, supra, 448 U.S. at 604, 100 S.Ct. at 2842, 65 L.Ed.2d at 1008 (Rehnquist, J., dissenting).
Finally, Justice Blackmun, concurring in judgment, was "driven to conclude, as a secondary position, that the First Amendment must provide some measure of protection for public access to the trial." Id., 448 U.S. at 604, 100 S.Ct. at 2842, 65 L.Ed.2d at 1007. Justice Stewart, also concurring in judgment, found a limited first amendment right of access to trials, and cited Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), for the proposition that the "right to publish implies a freedom to gather information." Richmond Newspapers, supra, 448 U.S. at 599 & n.2, 100 S.Ct. at 2840 & n.2, 65 L.Ed.2d at 1004 & n.2.
To summarize, the Supreme Court's present position on a First Amendment right of access to governmental information appears to be the following: first, four members of the Court have recognized a rather broad right to gather information (Justices Brennan, Marshall, Powell and Stevens); second, four members recognize a right of access to information at least to the *278 extent of providing access to trials (Chief Justice Burger and Justices White, Stewart, and Blackmun); and third, one member recognizes no right of access whatsoever (Justice Rehnquist).
Needless to say, the extent of the public's First Amendment right of access to governmental information is open to varying interpretations. See The Herald Co. v. McNeal, 553 F.2d 1125, 1131 n.10 (8th Cir. 1977). In the present case, were I to find a rather broad right of access, the constitutionality of the Bank's Amendment would be questionable. Furthermore, I have grave doubts about the constitutionality of section 610.105, which appears to close the court records in trials where the accused is not found guilty.
All of these issues involve a need to make explicit findings of fact concerning the Bank's Amendment's application to various situations. The bald assertion, in the majority memorandum, ante at 273, that "[v]alid justifications support the closure or expungement of the arrest records of persons not subsequently charged or ultimately determined to be innocent" does not suffice absent an application of these justifications to the particular circumstances involved. See Central Hudson Gas & Electric Corp. v. Public Service Commission, 447 U.S. 557, 565, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341, 351 (1980); Richmond Newspapers, supra, 448 U.S. at 586, 100 S.Ct. at 2833, 65 L.Ed.2d at 997 (Brennan, J., concurring in judgment). Given the developing nature of the law in the area of access to governmental information, I believe summary judgment is inappropriate. The count should be heard on its merits.

III.
Plaintiff also alleges that the Bank's Amendment is unconstitutional under the Missouri Constitution for a variety of reasons. The plaintiff asserts that sections 610.100-610.115 are in violation of:
(1) Article I § 8  free speech clause;
(2) Article III § 40 (30)  as a special law having application to cities and counties having a population of 500,000 or more where no rational basis for the classification exists;
(3) Article I § 10  the due process clause  as depriving plaintiff of its property right in news and other such deprivations guaranteed by the due process clause, such as depriving a plaintiff of the information necessary to fashion an alibi defense;
(4) Article I § 8  the libel or slander clause  as depriving plaintiff of the means to fashion a libel defense; and
(5) Article III § 23  as part of a bill containing a subject not clearly expressed in its title.
These issues may be heard in this court under the doctrine of pendent jurisdiction. See United Mineworkers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Given the limited record before us, I cannot say that summary judgment is appropriate to decide these difficult state constitutional issues.
NOTES
[1] Section 610.100 provides:

If any person is arrested and not charged with an offense against the law within thirty days of his arrest, all records of the arrest and of any detention or confinement incident thereto shall thereafter be closed records to all persons except the person arrested. If there is no conviction within one year after the records are closed, all records of the arrest and of any detention or confinement incident thereto shall be expunged in any city or county having a population of five hundred thousand or more.
Section 610.105 provides:
If the person arrested is charged but the case is subsequently nolle prossed, dismissed or the accused is found not guilty in the court in which the action is prosecuted, official records pertaining to the case shall thereafter be closed records to all persons except the person arrested or charged.
Section 610.110 states that once the arrest records are closed or expunged no person shall be held guilty of perjury for false statement concerning their existence. Section 610.115 states that any person who willfully violated Section 610.100 or Section 610.105 is guilty of a misdemeanor.
[2] Plaintiff, for example, does not purport to be entitled to investigative material in the police files.