**BOB'S HOME SERVICE, INC. and Laverne A. Zykan, Appellants,**

v.

**WARREN COUNTY; Leonard H. Sutton; Cornelius Held; Donald Stuck; Robert Lewis; Calvin Groeper; Wayne Toedebusch; Leland Johnson, Sr.; Lyonell Schweerkoetting, Jr.; James Reid, Clinton Buescher; and E.J. Walk, Jr., Appellees.**

No. 84–1072.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1984.

Decided Feb. 21, 1985.

As Amended on Denial of Rehearing and Rehearing En Banc March 27, 1985.

Charles Alan Seigel, Jay L. Levitch, Stolar, Heitzmann, Eder, Seigel & Harris, St. Louis, Mo., Timothy M. Joyce, Pros. Atty., Warren County, Warrenton, Mo., for appellees.

Chester A. Love, Daniel P. Card II, St. Louis, Mo., for appellants.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

ARNOLD, Circuit Judge.

Bob's Home Service, Inc., and Laverne Zykan appeal from the District Court's dismissal of their complaint regarding restrictions imposed upon their business, a hazardous-waste landfill, by the official master plan of Warren County, Missouri. *Bob's Home Service, Inc. v. Warren County*, 577 F.Supp. 152 (E.D.Mo.1983). Named as defendants were Warren County, the County Court,[1] the County Administrative Judges, and the members of the Warren County Planning Commission. The District Court held that the case was not ripe for review, and, in the alternative, that dismissal was proper under the abstention doctrine. We hold that the case was ripe, and that, although the District Court correctly invoked the abstention doctrine, it should not have dismissed the complaint outright, but rather should have retained jurisdiction, while allowing state-law issues to be decided in the Missouri state courts. The judgment will be vacated, and the cause remanded to the District Court for further proceedings.

## I.

Bob's Home Service, Inc. (BHS), operates a hazardous-waste landfill in Warren County, Missouri. Its current state permit allows disposal on 24 acres of a 158-acre tract of land owned by Laverne Zykan, the president and sole shareholder of the company. An official master plan for the development of Warren County, prepared by the Warren County Planning Commission,

was adopted by the County Court in 1983. The official master plan prohibits BHS from enlarging its operations and accepting certain chemicals and compounds for which BHS does not presently have a permit. Plaintiffs sued the defendants in federal court, asking for a declaratory judgment, injunctive relief, and damages. Three days later defendants filed suit in the Circuit Court of Warren County seeking a declaratory judgment as to the validity of the official master plan under Missouri law.

The plaintiffs' complaint focuses on three issues. First, plaintiffs allege that the defendants' official master plan is invalid under Missouri state law, Mo.Ann.Stat. §§ 64.800–64.905 (Vernon 1966 & Pocket Part 1985). They allege that the defendants did not have the authority to adopt and impose regulations and restrictions governing the storage, treatment, and disposal of hazardous waste. Second, plaintiffs allege that the plan is an unconstitutional taking of property without just compensation. Finally, plaintiffs argue that they are being denied equal protection of the laws because the master plan singles out their land for unfavorable treatment.

Defendants filed a motion to dismiss, arguing the claim was premature because BHS had no right to expand and enlarge its operations until it obtained the approval of the Missouri Department of Natural Resources (MoDNR) and the Environmental Protection Agency. BHS does not yet have the necessary approval of these agencies. It filed a request for an expansion permit with the MoDNR in 1979, but the permit has not yet been granted or denied. Alternatively, the defendants moved for abstention and asked the District Court to send the parties to the state courts for a ruling on the state-law issues.

The District Court dismissed the suit because it believed the case did not present a justiciable controversy. Alternatively, it dismissed the complaint under the absten-

---

1. The County Court in Missouri is an administrative body, not a judicial court. After January 1, 1985, the county courts are called county commissions, and the county judges are called commissioners. Mo.Ann.Stat. § 49.010 (Vernon Pocket Part 1985).

tion doctrine, because a similar suit was pending in state court, the federal issues might be mooted by the state court's decision, the state statutes had not been previously interpreted by state authorities, and the issue was an important one to the local community and state government. This appeal followed.

## II.

In holding that the case was not ripe for adjudication by a federal court, the District Court reasoned that "[t]he plaintiffs cannot expand the use of the waste disposal facility until granted a permit by the state. The state has not yet granted a permit and indeed may never do so. In the absence of a state permit there is not sufficient immediacy or reality to warrant the issuance of a declaratory judgment." 577 F.Supp. at 153–54.

▉ In order to establish that their case is ripe for judicial review, plaintiffs must meet two requirements. First, they must show a sufficiently concrete "case or controversy" as that phrase is used in Article III of the Constitution. Second, assuming that Article III is satisfied, they must also show that prudential considerations justify the present exercise of judicial power. *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 81, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978). Because the District Court dismissed this case with only plaintiffs' complaint and defendants' motion to dismiss before it, we must take the allegations of plaintiffs' complaint as true for present purposes. Approaching the case on that basis, we believe that ripeness has been established, at least as a matter of pleading.

▉ In order to show that they are parties to a live "case or controversy," plaintiffs must show that they are suffering an immediate injury because of defendants' master plan, and that the relief requested, an adjudication that the master plan is invalid and an injunction against its enforcement, would redress the injury complained of. *Id.* at 81, 98 S.Ct. at 2634. Plaintiffs allege that the official master plan is a taking of their property without just compensation. Such a taking involves more than a denial of plaintiffs' right to expand their operations in the future. It also implies an immediate injury, a reduction in the value of plaintiffs' land and business. To the extent that potential purchasers have a valid expectancy that the facility can be expanded beyond its initial phase of development onto the remainder of the tract, the property becomes more valuable, and the official master plan has the effect of eliminating or reducing the validity of such an expectancy. The value of the property is thus diminished. There is, therefore, an immediate injury, and this injury would be remedied if the master plan is declared invalid. Whether such a diminished value, occasioned by official action, is a "taking" within the meaning of the Fifth Amendment is an issue that we need not now decide. That question goes to the merits of the case and should be decided by the District Court on remand if necessary. We hold only that a diminution in value is an immediate injury that presents a presently justiciable question.

▉ Prudential considerations support the conclusion that the case (aside from questions of abstention, which we shall address below) is ripe for adjudication. Defendants point out that the state has not granted a permit to plaintiffs, and that until such a permit is granted by the Missouri Department of Natural Resources plaintiffs cannot expand their operation, no matter what master plan is in effect in Warren County. The complaint alleges, however, that Warren County has informed the MoDNR of the existence of its master plan and has "demanded" that the MoDNR not grant plaintiffs a permit. A fair inference from this allegation is that the state may be influenced to deny the permit, or not to act on plaintiffs' application for it, by the existence of the master plan. The absence of a state permit, in other words, is not clearly separate from and independent of the existence of the master plan of which plaintiffs complain.

We believe, therefore, that the interests of justice would be served by deciding the validity of the master plan now, instead of deferring the question until the state grants a permit, if indeed it ever does. The question of the master plan's validity will not be presented in any better light after a permit is granted. As the Supreme Court has stated: "[s]ince we are persuaded that 'we will be in no better position later than we are now' to decide this question we hold it is presently ripe for adjudication." *Duke Power Co.*, 438 U.S. at 82, 98 S.Ct. at 2635, quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 145, 95 S.Ct. 335, 359, 42 L.Ed.2d 320 (1974).

### III.

■ The District Court, in the alternative, ruled that dismissal was appropriate under the abstention doctrine. Abstention is proper in limited areas, for example, when a federal constitutional issue might be mooted by a state-court determination of pertinent questions of state law. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). If the Missouri state courts decide, as a matter of state law, that Warren County has no authority to bar expansion by BHS, then plaintiffs' federal constitutional attack on the master plan becomes academic.

We agree with the District Court's decision to abstain on this basis. "[F]ederal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass upon them." *Harrison v. NAACP*, 360 U.S. 167, 176, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959). This policy is necessary to avoid undue interference by federal courts in state concerns and is essential to the balance of the federal system. The Missouri statutes in question, having to do with zoning and planning powers of counties (Warren County has "planning" authority, but not "zoning" authority), have not previously been interpreted by the state courts, and they are not so clear on their face that a federal court can construe them with much assurance. The state courts should therefore be given the opportunity to interpret their own statutes and determine the validity of the official master plan as a matter of state law. We also note that the issue of the location of hazardous-waste dumps is of great concern to the local community as well as to the state government.

■ This type of abstention, frequently referred to as *Pullman* abstention, however, involves not an abdication of federal jurisdiction, but only the postponement of its exercise. *Harrison v. NAACP, supra,* 360 U.S. at 177, 79 S.Ct. at 1030. The District Court should therefore retain jurisdiction of this case, pending submission of the state-law questions to the state courts. *American Trial Lawyers Ass'n v. New Jersey Supreme Court*, 409 U.S. 467, 469, 93 S.Ct. 627, 629, 34 L.Ed.2d 651 (1973) (per curiam); *Herald Co. v. McNeal*, 553 F.2d 1125, 1128 & n. 5 (8th Cir.1977). This is not a case, like *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), in which the subject matter of the action is highly complex or unique, or as to which the state has established a special system of adjudication. Therefore, *Burford* abstention, a feature of which is outright dismissal of the complaint by the federal court, was not appropriate here.

In sum, we hold that the case was ripe for review, and that, although the District Court properly abstained from the immediate exercise of federal jurisdiction, it should have retained jurisdiction of the case while allowing the parties to litigate the state-law questions in the Missouri state courts. When the state-law questions have thus been determined, if the federal issues have not become moot, plaintiffs may return to the federal forum and pursue their constitutional claims. See *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 415–17, 84 S.Ct. 461, 464–65, 11 L.Ed.2d 440 (1964).[2]

---

**2.** Certain individual defendants, against whom damages are sought in their individual capacities, suggest that we should affirm the dismissal of the complaint as to them on the ground that

Vacated and remanded for further proceedings consistent with this opinion.

they have legislative immunity from claims for damages under 42 U.S.C. § 1983. The District Court did not reach this issue, instead choosing to dismiss the complaint on the grounds of ripeness and abstention which we have discussed in the text of this opinion. Neither do we reach it at this time. On remand, the individual defendants are free to reassert this defense in the District Court.